Carl Walter **AIKEN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 8098.

United States Court of Appeals Fourth Circuit.

Argued June 6, 1960.

Decided Sept. 9, 1960.

**216**

Carl Walter Aiken, pro se, on brief; Bruce J. Brown (Court-appointed counsel), Asheville, N. C., for appellant.

James E. Holshouser, U. S. Atty., and H. Vernon Hart, Asst. U. S. Atty., Greensboro, N. C., on the brief, for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and CHARLES F. PAUL, District Judge.

SOBELOFF, Chief Judge.

The appellant, Carl Walter Aiken, now serving a total sentence of twelve years upon conviction after guilty pleas to several indictments charging forgery of United States postal money orders, post office burglary and related offenses, filed a petition under section 2255 of Title 28 U.S.C.A. Prepared by a layman, without the assistance of counsel, the allegations of the petition were in certain respects not clear, and were largely conclusory without adequate recital of supporting details. The District Judge dismissed the petition without holding a hearing and without writing any opinion.

■ At the argument of the appeal the United States Attorney took the initiative in suggesting that in the interest of justice the defendant should have an opportunity to place before the court in proper form any facts supporting his contentions. We continued the case to afford the defendant, now represented by a court-appointed lawyer, such an opportunity, and we wish to commend the attitude of the United States Attorney. Substantial rights should not be made to depend upon the technical skill or lack of it of a layman uneducated in the law.

■ There has now been filed an affidavit of the defendant, which appears as an appendix to this opinion, setting forth in detail the circumstances under which he allegedly was induced to plead guilty and to refuse counsel. On their face these allegations raise serious constitutional questions as to the voluntariness and validity of the waiver of counsel and the waiver under Rule 20 of the Federal Rules of Criminal Procedure, 18 U.S. C.A., and also of the guilty plea. See: Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Waley v. Johnston, 1942, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302.

Section 2255 of Title 28 U.S.C.A. provides in part:

" * * * Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

See also United States v. Hayman, 1952, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232. With the case in its present posture, it certainly cannot be said that the record conclusively shows that Aiken is entitled to no relief. The statute requires that significant issues of fact presented by the petition and affidavit be resolved in a hearing, after which the District Judge should make findings of fact and conclusions of law. We remand for this purpose. The United States Attorney agrees that this is the appropriate procedure and he will have the opportunity to present counteraffidavits and other evidence in the District Court.

Vacated and remanded for further proceedings.

### Appendix

"Carl Walter Aiken, being duly sworn, deposes and says:

"That he is the Appellant in this case; that he moved the sentencing Court by a duly verified Motion under the provisions of 28 U.S.C. 2255 for a hearing on allegations that his conviction was obtained in violation of the United States Constitution; that Appellant at said hearing would show unto the Court the following:

" 'Following my arrest and confinement in the Forsyth County Jail I was periodically interrogated by Postal Inspectors Robert S. Fisher and S. G. Ohwall. The interrogations often lasted several hours. During the first and second interrogation they tried to browbeat me into making a confession and telling them about the Money Orders, Post Office burglary, etc. During these early interrogations I refused to admit knowledge of anything. The Postal Inspectors changed their tactics and told me that they'd make a deal with me if I would come clean and tell them everything. They told me that they already had enough evidence against me to bury me in prison if I didn't cooperate with them. They told me that they were friends of Judge Stanley and that he was interested in the case. That they'd discussed the case with him before coming over to talk with me. They mentioned a law called Rule 20 where a man in my position could be given a break by cooperating with the law. They explained the Rule 20 law to me thusly: That where a person had committed multiple offenses such as I was accused of committing, that each and every one of my offenses could be consolidated into one indictment and that only one sentence could be imposed thereunder. That it was entirely up to the arresting officers whether or not they agreed to let me plead guilty under this Rule 20 law. They impressed upon me that I could only receive a maximum of five years if they decided to let me plead guilty under this Rule 20 law. After baiting me up with this Rule 20 law they left me to think things over. During their next interrogation they informed me that they'd discussed the possibility of letting me plead guilty under the Rule 20 law with Judge Stanley and that he had given them the green light providing that the U. S. Attorney was agreeable to the deal. They informed me that they had discussed the matter with the U. S. Attorney and that he had given them a free hand in the matter. The Postal Inspectors promised me that they would try to persuade the Judge to give me a break, but told me that I shouldn't be surprised if the Court, in view of my past criminal record, imposed a sentence of five years. The Postal Inspectors told me that an attorney could queer the entire deal, and that I should refuse the appointment of counsel and talk to the Judge myself. They impressed upon me that Judge Stanley was a fair minded person and would rather hear my side of the case in person rather than from an attorney. They told me about a couple of cases where co-defendants had appeared in Court to enter guilty pleas, one had counsel and the attorney had made the Judge angry, and that the Judge had imposed five years in the counseled case, and had imposed a sentence of three years in the uncounseled case, and that the fellow that got the three year sentence had a long criminal record, where the other fellow was a young fellow with only a minor rec-

cord. I believed what the Postal Inspectors told me, and followed their suggestions. I made a clean breast of everything and entered the Courtroom believing that five years was the maximum sentence that could be imposed under the Rule 20 law, and that an attorney would do me more harm than good under the circumstances. As to the dates of the interrogations, I don't know. I was arrested January 21, 1958, and was in Forsyth County Jail in Winston-Salem several days, and then moved to Greensboro to await trial. I was visited several times in Winston-Salem and I believe four or five times in Greensboro. I was interrogated two or three times a day and sometimes at night in Winston-Salem. I just can't remember the dates.' "