Thomas Joseph Francis REED,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 8274.

United States Court of Appeals
Fourth Circuit.

Argued April 18, 1961.

Decided June 12, 1961.

Alexander Wellford (court-assigned counsel), Richmond, Va., for appellant.

Frank M. McCann, Asst. U. S. Atty., Roanoke, Va. (John Strickler, U. S. Atty., and H. Clyde Pearson, Asst. U. S. Atty., Roanoke, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

After a plea of guilty, Thomas Joseph Francis Reed was convicted by the United States District Court for the Western District of Virginia on November 10, 1959, of transporting a stolen motor vehicle in interstate commerce in violation of the Dyer Act, 18 U.S.C.A. § 2312. Reed, a twenty year old youth with a seventh grade education, was then committed to the custody of the Attorney General for treatment under the Federal Youth Corrections Act, 18 U.S.C.A. § 5005 et seq. and is now confined in the United States Penitentiary at Lewisburg, Pennsylvania.

On August 27, 1960, Reed filed a petition under 28 U.S.C.A. § 2255 to vacate his conviction and sentence. The petition was dismissed by the District Court without holding a hearing, and this appeal is from that dismissal.

The allegations in Reed's petition are not made with all the clarity and coherence that might be desired, but this is, of course, normally true of petitions prepared by inmates of a penitentiary. Still, such petitions must be examined and the essential factual allegations distilled from them in order to discover if a case is stated involving denial of substantial rights, thereby calling for a hearing on the facts. It cannot be stressed too much that the language of section 2255 itself *requires* a hearing, with findings of fact and conclusions

of law, "[u]nless the motion and the files and records of the case *conclusively show* that the prisoner is entitled to no relief * * *." (Emphasis supplied). See also Aiken v. United States, 4 Cir., 1960, 282 F.2d 215.

The petitioner's allegations here are as follows: He was stopped by a Virginia State Trooper at about 2:30 p. m. on October 8, 1959, while he was walking along a state highway. After being questioned, he was taken to a police station, without any arrest warrant being shown to him, and there interrogated for about two hours. Then he was told, "A few nights in jail will loosen your tongue." Reed continues:

"The petitioner would like at this time to say that after being in this jail only one hour, he knew what the officer meant when he made the last statement. The petitioner was held over here for (3) three nights during which time he had no access to water either for the purpose of drinking. He was not able to wash his hands nor to shower, or shave for fear of his health. And would have answered Yes to any charge that the officer suggested.

"The petitioner would like at this time to state that at no time during his incarceration did he have benefit of counsel nor was he allowed to make any phone call to retain counsel."

On the day after his arrest, while still in the custody of state officials, an F.B.I. agent, Icealius Hall, took a statement from Reed in which he confessed to stealing a car in Baltimore, Maryland, and transporting it to Covington, Virginia.

On October 10, 1959, Hall, the federal agent, signed a complaint against Reed for violating the Dyer Act, and a warrant of arrest was issued on the same day. Reed was not taken to a Commissioner for hearing until October 12, 1959. It is alleged that immediately after asking Reed's name, the Commissioner directed him to plead. After the plea, the Commissioner set bail. Reed insists that the Commissioner did not offer to appoint him counsel, nor did he even inform him of his right to retain counsel, as required by Rule 5(b), Federal Rules of Criminal Procedure, 18 U.S.C. A.

Reed remained in custody until his trial on November 10, 1959. He was then brought into court, and the transcript of the proceedings reveals that the District Judge at that time asked him if he wanted counsel. The Judge appointed him a lawyer, who then spoke with Reed and the F.B.I. agent, Hall. After this discussion in a conference room, the lawyer returned to the courtroom with Reed and entered a plea of guilty for him. The attorney then informed the court briefly about the defendant's record and commented that Reed needed "guidance and help." The District Judge thereupon pronounced sentence. The entire trial transcript from the time Reed entered the courtroom until the rendering of the court's judgment is set out below.[1]

---

1. "Mr. McCann: Mr. Reed is in custody. (Whereupon Mr. Reed was brought into the courtroom.)

"Q. You are Thomas Joseph Francis Reed? A. Yes, sir.

"Q. You have a lawyer? A. No, sir.

"Q. Do you want a lawyer? A. I would like to if I could.

"Mr. McCann: He is requesting that he have an attorney, your Honor.

"The Court: Are you able to employ one?

"A. No, sir.

"Mr. McCann: He has been in custody since he was arrested. He's from Maryland.

"The Court: I will appoint Mr. Andrew Davis to go out and talk with the boy and represent him. (Mr. Davis and defendant retire to a conference room, and after a time returned to the courtroom.)

"Mr. McCann: Mr. Reed, you are charged with the violation of the Dyer Act. (Indictment is read to defendant by Mr. McCann)

858

■ We think that enough was alleged to require a hearing in the District Court, with findings of fact and conclusions of law. Although we do not rule on the sufficiency of any particular allegation to state a denial of constitutional rights, it cannot be said that the petition and record "conclusively show that the prisoner is entitled to no relief." The delay in taking Reed to a Commissioner, and the confession during the interval, in the circumstances here, might raise an issue under the Supreme Court's decision in Anderson v. United States, 1943, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829. Moreover, the voluntariness of the confession apart from the delay is an issue presented by the petitioner's allegations.

We are cognizant that it has been held that where a *voluntary* plea of guilty has been entered, the fact of an unnecessary delay in taking a prisoner before a committing official, or an involuntary confession, constitutes no ground for setting aside the sentence. See, e. g., Barnhart v. United States, 10 Cir., 1959, 270 F.2d 866.

On the other hand, the petitioner here attacks the voluntariness of the guilty plea itself. All of the circumstances, including what preceded and what took place at the trial, are pertinent considerations in determining the voluntariness of the plea. Perhaps if Rule 11 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., had been complied with, this issue would have been obviated. The record reveals, however, that the rule

requiring a judge not to accept a guilty plea "without first determining that the plea is made voluntarily with understanding of the nature of the charge," was totally disregarded. In Gundlach v. United States, 4 Cir., 1958, 262 F.2d 72, 76, certiorari denied 360 U.S. 904, 79 S.Ct. 1283, 3 L.Ed.2d 1255, we said, in a case involving a similar issue but where the trial judge did grant a hearing:

" * * * In the instant case, the District Judge held a thorough hearing in which it was abundantly proved that the defendant's plea was made with knowledge and volition. This hearing supplied the certainty which Rule 11 is intended to assure, and no lingering suspicion of unfairness or denial of due process remains. We have discovered no case in which judgment and sentence were voided after such a hearing and findings as we have here.

"This is not to say, however, that we approve anything less than full compliance with Rules 10 and 11. These rules are designed not only to safeguard important rights of defendants, but their observance serves also to protect proper administration of the criminal law. When the trial judge fully complies with these rules and is careful to have the record plainly show that this has been done, it may go far to foreclose irresponsible challenges in the future and the neces-

"Mr. Davis: The plea is guilty.
"Mr. Hall, Probation Officer, read his report on Thomas Joseph Francis Reed.
"Mr. Davis: Your Honor asked me to talk to this defendant and advise him, and we have; and Officer Hall has been very cooperative in giving us such facts as he could.
"I talked with the defendant. He, of course, is guilty. He has a record of other offenses of automobiles. He was 20 years old when he was discharged after a service of 10 months because of automobile theft.

"While Mr. Hall didn't tell me so, I got the impression that he needs some guidance and help.
"The Court: What do you think about sending him to this school?
"Mr. Davis: I think that is what he needs.
"The Court: It is the judgment of this Court that you be placed in custody of the Attorney General of the United States, who, I think, will send you to this place where they can rehabilitate you and select some work that will help your attitude and train you, and I think that they will do you good; and I think that's the best solution of this case."

sity for a hearing under Section 2255 at a time when the facts surrounding the arraignment, plea and sentence may not be as fresh and readily available as they were in this instance. * * *"

■ Because Rule 11 was not complied with here, and because of the facts allegedly surrounding the detention and confession, a hearing is required in this case. The voluntariness of a guilty plea is an issue raising constitutional questions that can be considered in a collateral proceeding. Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L. Ed. 830; Waley v. Johnston, 1942, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; Behrens v. Hironimus, 4 Cir., 1948, 166 F.2d 245; Aiken v. United States, 4 Cir., 1960, 282 F.2d 215.

■ Additionally, Reed's petition raises a serious question concerning the right to counsel under the Sixth Amendment. Although Rule 5(b) of the Federal Rules of Criminal Procedure requires a Commissioner to advise a prisoner of his right to counsel, it is asserted that this was not done. As the trial transcript shows, the petitioner had no lawyer until the trial began. Moreover, the casual manner of the lawyer's appointment "to go out and talk with the boy," followed by a short conference allegedly attended by the F. B.I. agent, and then the return to the courtroom where the attorney entered the guilty plea, cannot meet with our approval. The Sixth Amendment requires *adequate* representation by counsel. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Holly v. Smyth, 4 Cir., 1960, 280 F.2d 536. While we do not intend to decide now that enough has been shown to constitute a denial of this right, we do think that this matter warrants inquiry.

The petitioner's allegations plus the trial record are sufficient to raise substantial questions concerning the overall fairness of the proceedings. A hearing, at which time all of these matters can be inquired into, is necessary.

Reversed and remanded.