Vincent L. **PILKINGTON**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 8706.

United States Court of Appeals Fourth Circuit.

Argued Oct. 9, 1962.

Decided March 2, 1963.

2. See Footnote 1 supra.

Lewis T. Booker, Richmond, Va. (court-assigned counsel), for appellant.

James A. Oast, Jr., Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and WINTER, District Judge.

SOBELOFF, Chief Judge.

The question presented by this appeal concerns the availability of post-conviction relief when the District Court, in the course of criminal proceedings, after advising a youthful criminal defendant that he is subject to a maximum of *five years* imprisonment for the particular crime charged, accepts a plea of guilty without further explanation of the possible sentence and proceeds to impose sentence under the Federal Youth Corrections Act, 18 U.S.C.A. § 5005 et seq., under which the defendant is subject to a potential maximum sentence of *six years* confinement.[1]

The appeal is by Vincent L. Pilkington, a federal prisoner, from an order of the

1. Title 18, § 5017(c) provides:
"(c) A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction."

District Court denying without a hearing his petition for post-conviction relief. (The petitioner stated that he was proceeding under 28 U.S.C.A. § 2255.) He alleged that in July, 1958, he was charged with stealing $800.00 from a United States Navy Base Exchange; that upon being taken before the District Court he was advised by the Judge that the maximum penalty for the offense was five years imprisonment; that he subsequently pleaded guilty in reliance upon this representation; that the court then sentenced him under the Federal Youth Corrections Act to a term of from sixty days to six years confinement; and that prior to the imposition of sentence, there had been no mention to him of the provisions of the Youth Corrections Act or a possible six-year maximum sentence.

The files and records relating to Pilkington's 1958 criminal trial contain an amplification of the facts, although the essential allegation of his petition is not contradicted. Pilkington, then 20 years of age, was arrested by an agent of the Federal Bureau of Investigation on July 21, 1958, and taken before a United States Commissioner that same day. On the following day, July 22, he was brought before the District Court. The transcript of the July 22 proceedings reveals that the court advised Pilkington as follows:

"THE COURT: In order that I may explain to you more fully what the charges apparently are as related by the Assistant United States Attorney, I shall summarize the specific sections of the law that he has just referred to. Under Section 661 of Title 18, United States Code, it is provided that, 'Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished as follows:

'If the property taken is of a value exceeding $100, or is taken from the person of another,' it shall be punished 'by a fine of not more than $5,000, or imprisonment for not more than five years, or both * * *.' "

The court then advised the defendant of his right to indictment by a grand jury and his right to counsel. Upon being informed by the defendant that counsel was desired and that the defendant lacked funds to employ his own, the court agreed to appoint a lawyer to represent him. At the end of the hearing, Pilkington indicated his concern over the possible length of the sentence if he was convicted, and asked the court: "What if this is your first offense as an adult?" The Judge replied that he could not tell Pilkington what the sentence would be before hearing the evidence and reading the probation officer's report.

Pilkington was next brought before the court on August 22, 1958, at which time he was represented by the court-appointed attorney. After indictment by a grand jury had been waived, a criminal information filed, and arraignment waived, the defendant entered a plea of guilty. The Judge inquired, "Do you enter that plea of guilty voluntarily on your part and with no promises or assurances as to what disposition I will make of the case?" However, before accepting the plea, the Judge added nothing to what he had said a month earlier with respect to the possible sentence. An agent of the Federal Bureau of Investigation then testified for the purpose of establishing the *prima facie* existence of the crime, and Pilkington testified as to his prior difficulties with the law. Pilkington was then sentenced to be committed to the custody of the Attorney General pursuant to the provisions of the Federal Youth Corrections Act. After pronouncing sentence the Judge explained that it was indeterminate in duration but that the defendant "must be discharged on or before six years from this date." As far as the transcript discloses, this was the only mention of a possible six-year sentence, and the first mention of any particular length of term after the Judge had advised Pilkington a month earlier that five years imprisonment was the maximum possible sentence.

Following his commitment to the custody of the Attorney General, the defendant was confined in an institution for young offenders and was released conditionally at sometime not specified in the record. After remaining at large for eight months, he was apprehended as a parole violator and returned to custody, and is now in the Federal Penitentiary at Lewisburg, Pennsylvania. In the appellant's brief it is asserted that as of the date of its filing, August 24, 1962, he had been in confinement under sentence almost exactly four years, but in this he was in error because apparently he included the eight months he had been under conditional release.

We think that the above-recited allegations, together with the facts appearing from the District Court record, were sufficient to require a hearing on Pilkington's petition with findings of fact and conclusions of law by the District Court. Enough is shown to create a doubt concerning the voluntariness of the guilty plea. This is, as we have pointed out on several recent occasions, an issue raising constitutional questions that can be considered in a proceeding under 28 U.S. C.A. § 2255. Aiken v. United States, 282 F.2d 215 (4th Cir., 1960); Reed v. United States, 291 F.2d 856 (4th Cir., 1960); Aiken v. United States, 296 F.2d 604 (4th Cir., 1961). See also, Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Behrens v. Hironimus, 166 F.2d 245 (4th Cir., 1948); Alexander v. United States, 290 F.2d 252 (5th Cir.), cert. denied, 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed. 2d 89 (1961); United States v. Salerno, 290 F.2d 105 (2d Cir., 1961).

More particularly, where, in petitions under 28 U.S.C.A. § 2255, it has been alleged that pleas of guilty were entered because the defendant was misled by statements of the presiding judge or prosecuting officials, or even under some circumstances of his own attorney, with regard to the nature of the charge or the possible penalty involved, hearings on such allegations have been ordered.

United States v. Davis, 212 F.2d 264 (7th Cir., 1954); Kennedy v. United States, 249 F.2d 257 (5th Cir., 1957), cert. denied, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959); Heideman v. United States, 281 F.2d 805 (8th Cir., 1960); Aiken v. United States, 282 F.2d 215 (4th Cir., 1960). And in Meredith v. United States, 208 F.2d 680, 682 (4th Cir., 1953), affirming the denial of a motion under 28 U.S.C.A. § 2255, where the voluntariness of the guilty plea was attacked for alleged misleading advice concerning the possible sentence, this court underscored the fact that "there is no contention that the judge or the United States Attorney made any promises to him or misled him in any way." In the present case, on the other hand, Pilkington specifically alleges that he was misled by the Judge's statement that the maximum penalty could not exceed five years, whereas he is actually subject to six years under the sentence imposed.

In its brief and argument the Government strongly relied on the case of Cunningham v. United States, 256 F.2d 467 (5th Cir., 1958), but we think it affords little support to the Government's position. Its value as a precedent in this case has, it seems to us, been destroyed by the more recent unanimous decision of the Supreme Court in Jones v. Cunningham, 83 S.Ct. 373.

In the Fifth Circuit case the defendant was convicted of stealing property valued at less than $100.00, an offense for which the maximum penalty specified in the statute is imprisonment for one year. The defendant, however, was sentenced under the Youth Corrections Act which provides for a possible maximum penalty up to six years. Two issues were discussed in the Fifth Circuit's majority opinion. The first was whether the Youth Corrections Act applied to misdemeanors; the second was whether, if the Act applied, it deprived a youthful defendant of equal protection under the Fifth Amendment and violated the prohibition against cruel and unusual punishment contained in the Eighth Amendment, in permitting a sentence that could

run as long as six years, for an offense the statutory maximum limit of which is one year. Both questions were answered adversely to the appellant. In the case now before us the constitutionality of the Youth Corrections Act is not challenged, only the validity of the sentence insofar as it may exceed what the court told the defendant, on entry of the plea, was the maximum sentence possible for the offense.

The Fifth Circuit's majority opinion did not, in our view, adequately answer the defendant's other point, which is of interest here, namely, that when he pleaded guilty nothing was said to him about the Youth Corrections Act, and only later did the judge mention for the first time the Youth Corrections Act and the range of penalties it permitted. Judge Rives, in dissent, pointed out that the defendant was unrepresented by counsel when he tendered his guilty plea, and was not then correctly advised of the range of allowable punishments, citing Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

It is true that in the Fifth Circuit case, as in ours, some time after the plea, when sentence was being imposed, the trial judge advised the defendant of the existence and the benefits of the Youth Corrections Act. However, the main thrust of the Fifth Circuit majority opinion was to emphasize the "benefits" flowing from the Act compared to imprisonment otherwise provided by law for the same offense. Its view seems to be that such confinement, even for a longer duration, being designed to rehabilitate and not to punish, is really not a penalty at all; therefore the defendant cannot complain if he was told nothing or even if he was misinformed about the range of penalties when his plea was accepted.

We consider this view "too narrow and formalistic." Jones v. Cunningham, supra.

■ As the majority opinion declares, the Act is based upon modern penological views and methods and aims at correction and rehabilitation rather than punishment. It is granted that it is constitutionally permissible to provde special procedures for sentencing youthful offenders, but this is beside the point: the point made is that the defendant was permitted to plead guilty under a misapprehension as to the penalties to which the plea subjected him. Rule 11, Fed.R. Crim.P., requires the judge to leave no room for such misapprehension. However looked at, the deprivation of liberty for a possible period of six years is a greater penalty than a sentence for a lesser period.[2] Applying the euphemism "treatment" to the discipline during confinement does not alter the arithmetic, and is immaterial for present purposes. In the Fifth Circuit case it was six years against one; in ours it is six against five.

Whatever basis there may ever have been for distinguishing between the nature of the confinement of an adult under the general statutes, and that of a younger person under the Youth Corrections Act cannot survive the recent decision of the Supreme Court in Jones v. Cunningham, supra. There it was held that even a parolee who had been released from prison but was nevertheless subject to the much milder control of the Parole Board, such as being obliged to report periodically and being restricted to less than complete freedom of movement without the parole officer's consent, and being subject also to rearrest and return to prison for a slight deviation from the parole officer's instructions, was

2. Of course, the statute (see n. 1 supra) requires a conditional release after not more than four years; but the defendant is then under supervision for two more years, and if he violates any condition of his conditional release, he may be returned to serve up to six years from the date of his conviction. Revocation of a release order does not require the same type of proof as is necessary to convict for a crime. The summary procedure is made possible because of the original sentence, which may run six years. It is through such procedure that Pilkington is now confined in the Federal Penitentiary at Lewisburg, without being reindicted.

still subject to a sufficiently significant measure of restraint on his liberty to permit the invocation of the writ of habeas corpus. Here we are dealing with actual confinement in an institution for a period which may run as long as six years. Six is indisputably more than five, notwithstanding any incidental difference in the disciplinary measures that may be taken. A statute designed for the benefit of youthful offenders should not be interpreted to diminish their rights under Rule 11, Fed.R.Crim.P., to which all defendants are entitled.

It should be made clear that we do not now decide that the petitioner is entitled to relief under 28 U.S.C.A. § 2255. Whether or not the guilty plea was made voluntarily and understandingly is a question of fact to be determined after an inquiry. A hearing may disclose that Pilkington, before pleading guilty, was actually aware of the possible penalties under the Federal Youth Corrections Act, having been informed by his attorney or by the probation officer with whom he conferred prior to trial, or by someone else. At such hearing many other relevant circumstances may be adduced. We decide no more than that a sufficient showing has been made to call for a hearing. "It cannot be stressed too much that the language of section 2255 itself *requires* a hearing, with findings of fact and conclusions of law, '[u]nless the motion and the files and records of the case *conclusively show* that the prisoner is entitled to no relief * * *.' (Emphasis supplied)." Reed v. United States, 291 F.2d 856, 856–857 (4th Cir., 1961). We are unable to say that the allegations and record here "conclusively"

show that the petitioner is entitled to no relief.

In addition to considering whether Pilkington's plea of guilty was involuntary and thus in violation of due process the District Court should also consider whether, on the facts as they may be developed, Pilkington should be afforded relief under Rule 32(d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. See Carter v. United States, 113 U.S.App.D.C. 123, 306 F.2d 283 (1962). That rule provides:

"Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; *but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.*" (Emphasis supplied.) [3]

In his petition, Pilkington in effect requested, as alternative relief, that the court permit him to withdraw his guilty plea and stand trial again.[4] While there may be a considerable overlap, the concept of "manifest injustice" under Rule 32(d) permits the judge a greater latitude than the requirements of constitutional "due process." See United States v. Lester, 247 F.2d 496, 500 (2d Cir., 1957); Georges v. United States, 262 F.2d 426, 430 (5th Cir., 1959). The facts disclosed in a hearing might not be sufficient for the court to conclude that the guilty plea was involuntary and violative of due process, yet the court may be of the opinion that clear injustice was done.

3. Before the adoption of this rule, a plea of guilty could be withdrawn after sentence only upon motion made within ten days of sentencing. However, there is now no specific time limitation upon the withdrawal of a guilty plea where "manifest injustice" is shown. See Notes of Advisory Committee on Rules, to Rule 32(d), 18 U.S.C.A.

4. Pilkington asked the court to "vacate and/or correct the illegal sentence he is now serving" or, in the alternative, to "vacate his sentence, and conviction, order a new trial and by so doing grant him his right to his day in court." Of course, the only relief available under Rule 32(d) is withdrawal of the guilty plea and a trial after a plea of not guilty. On the other hand, the possible relief available under 28 U.S.C.A. § 2255 is more varied.

**210**

Rule 32(d) has been held applicable in several cases involving situations not dissimilar. Thus, in United States v. Lias, 173 F.2d 685 (4th Cir., 1949), this court upheld a motion to withdraw a guilty plea, after service of the sentence was begun, on the ground that the defendant had been misled by the judge's statements in respect to the possible penalty. Judge Parker there stated, at pp. 688–689:

"The defendant swears that, as the result of what was said by the judge to his attorneys, he was led to believe that he would receive probation if he would plead guilty. The judge did not controvert the allegation that he had used the language attributed to him, but filed the memorandum * * * holding that, in view of the situation presented, he would allow the plea of guilty to be withdrawn and the defendant to stand trial. Certainly this was the proper course to be taken 'to correct manifest injustice', if, as a result of what the judge had said, the defendant was misled into pleading guilty under the belief that he would receive probation."

For other decisions recognizing the appropriateness of proceeding under Rule 32(d), where it is contended that the defendant was misled into pleading guilty because of erroneous statements by the judge or prosecuting attorney concerning the possible sentence, see United States v. Shneer, 194 F.2d 598 (3d Cir., 1952); Futterman v. United States, 91 U.S.App. D.C. 331, 202 F.2d 185 (1952); United States v. Lester, 247 F.2d 496 (2d Cir., 1957); Georges v. United States, 262 F.2d 426 (5th Cir., 1959); Jones v. United States, 279 F.2d 652 (9th Cir.), cert. denied, 364 U.S. 875, 81 S.Ct. 120, 5 L.Ed.2d 97 (1960).

■■ District judges in this circuit are strongly urged to explain the sentencing possibilities presented by the Federal Youth Corrections Act before finally accepting guilty pleas from youthful defendants and passing sentence under that Act. We recognize the practical inconvenience: the judge may not always know the defendant's age and eligibility when a plea is first tendered. But before the judge imposes a sentence upon a plea of guilty that may exceed the statutory limit applicable to an adult for the same offense, it is imperative that the youthful defendant shall be aware of the range of sentences to which the plea exposes him. If he has pleaded in ignorance of the possibilities he should be permitted to withdraw his plea. Rule 11, which requires the judge to satisfy himself that a guilty plea is voluntary, cannot be interpreted to mean that anything less will suffice than a complete understanding of the possible sentence.

Reversed and remanded for further proceedings in accordance with this opinion.