**Frederick W. ROWE, Jr., Petitioner,**

**v.**

**UNITED STATES of America,
Respondent.**

**Civ. No. C–64–23.**

United States District Court
W. D. Wisconsin.

April 2, 1964.

Michael J. Wyngaard, Spohn, Ross, Stevens & Pick, Madison, Wis., for petitioner.

N. S. Heffernan, U. S. Atty., Western Dist. of Wis., Robert Friebert, Asst. U. S. Atty., Western Dist. of Wis., Madison, Wis., for respondent.

RABINOVITZ, District Judge.

FINDINGS OF FACT

1. The petitioner, Frederick W. Rowe, Jr., was sentenced in the United States District Court for the Western District of Wisconsin, on May 20, 1963, for violation of the Dyer Act, Title 18 U.S.C. § 2312, under Title 18 U.S.C.A. Chapter 402, "Federal Youth Corrections Act" as provided by Section 5010(b) of said Chapter 402.

2. The petitioner was represented by a court appointed counsel, who recommended to the court that his client be sentenced under the Federal Youth Corrections Act.

3. Petitioner has since served in a Federal Prison and is now confined to the Federal Reformatory at Chillicothe, Ohio.

4. Petitioner did, on the 13th day of March, 1964, file before the present court, a proper affidavit in forma pauperis as provided by Title 28 §§ 1914 and 1915.

5. Petitioner further filed a petition under Title 28 § 2255, of the U. S. Code, alleging among other things as follows:

"7. The grounds on which I base allegations—the sentence which was imposed on me was invalid,—

"(a) It is incumbent upon the court in disposing of a case against a youthful defendant to explain fully the sentencing provisions of the substantive statute violated before accepting a plea of guilty.

"(b) It is incumbent upon the court in disposing of a case against a youthful defendant to explain fully the provisions of (The Youth Corrections Act) before accepting a plea of guilty.

"(c) The imposed sentence (under the provisions of Title 18, U.S.C., Section 5010(b), (The

Youth Corrections Act) which provides for a commitment not to exceed four (4) years with supervision to follow for a period not to exceed two (2) years is in excess of the maximum sentence provided for the substantive statute violated (18 U.S.C. 2312) which provides for a fine of not more than five (5) years, or both) and plead guilty to.

"8. The facts that support each of the grounds set out in (7), in the same order,—

"(a) The sentencing provisions of the substantive statute violated (18 U.S.C. 2312) were not explained or even mentioned by the court before accepting a plea of guilty.

"(b) The sentencing provisions of The Youth Corrections Act (Section 5010(b) Title 18 U.S.C.) were not explained or even mentioned by the court before accepting a plea of guilty.

"(c) The sentence imposed (under the provisions 18 U.S.C. 5010(b), (The Youth Corrections Act) provides for a maximum penalty of six (6) years as opposed to a maximum penalty of five (5) years (under the provisions 18 U.S.C. 2312) for the substantive statute violated and plead guilty to."

6. Petitioner was arraigned in the United States District Court for the Western District of Wisconsin on April 3, 1963, and waived indictment by Grand Jury in response to questions by the court and does not raise that question in his petition.

7. That the petitioner also waived the formal reading of the information in this matter.

8. That at the time of arraignment, the following colloquy took place between counsel for the petitioner and the court:

"THE COURT: I see.

"Mr. Brugger, you have had an opportunity of going over this matter with the defendant, Fred. W. Rowe, Jr., have you not?

"MR. BRUGGER: Yes, sir, I have.

"THE COURT: And you have gone over the matter of the charge that is made against him, the possible defenses that he might have to this case, and the possible consequences if he were either found guilty or pleaded guilty?

"MR. BRUGGER: Yes, sir.

"THE COURT: Are you satisfied at this time that he is prepared to go forward, if he waives the Grand Jury proceedings, to enter a plea here this morning?

"MR. BRUGGER: Yes, I am, your Honor."

9. That the following colloquy was had between the court and defendant:

"THE COURT: Fred. W. Rowe, Jr., do you understand the nature of the charge that is made against you?

"THE DEFENDANT: Yes.

"THE COURT: And this Court now asks you: How do you plead to the charge that is made against you in the information? Guilty, or not guilty?

"THE DEFENDANT: Guilty.

"THE COURT: That plea of guilty was entered by you with the advice of your attorney and voluntarily by yourself; is that correct?

"THE DEFENDANT: Correct.

"THE COURT: Now, nobody made any threats to cause you to make that plea of guilty?

"THE DEFENDANT: No, sir.

"THE COURT: Nobody made any promises to you?

"THE DEFENDANT: No.

"THE COURT: Especially, anyone connected with the United States Government?

"THE DEFENDANT: No, sir.

"THE COURT: And you know of no other reason, other than a knowl-

edge of your guilt, that induced you to plead guilty; is that correct?

"THE DEFENDANT: That's correct.

"THE COURT: All right. This Court finds and adjudges, upon the plea entered by Fred W. Rowe, Jr., that Fred W. Rowe, Jr., upon his plea of guilty, is adjudicated to be guilty of the crime charged in the information.

"This Court orders a pre-sentence investigation."

10. That the record discloses that the defendant was not advised of the maximum sentence of 18 U.S.C. § 2312, commonly termed "The Dyer Act", of $5,-000.00 fine, or up to 5 years imprisonment, or both.

11. That the record further discloses that on the 20th day of May, 1963, the petitioner appeared before another District Judge in the Western District of Wisconsin, and was advised of his rights under Rule 32(a); namely, that he was given an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment.

12. That the court appointed counsel asked that the petitioner be sentenced under the Federal Youth Corrections Act and the court did make the following statement in sentencing said petitioner:

"THE COURT: I am going to follow the suggestion of your counsel. I thought that was the thing to do, anyway; and if you will cooperate with the authorities I think they can do a great deal for you.

"The Court finds that the defendant, Frederick William Rowe, Jr., is a youth offender as defined in Section 5006(e) of the Federal Youth Corrections Act.

"It is the sentence and judgment of the Court that you Frederick William Rowe, Jr., be committed to the custody of the Attorney General under Section 5010(b) of the Federal Youth Corrections Act for treatment and supervision under the Youth Correction Division.

"This sentence is in lieu of imprisonment provided by law. The Youths Correction Division have the right to release you conditionally under supervision at any time it is felt that you are ready for such release. However, you must be released under supervision upon the expiration of four years from the date of conviction, and unconditionally discharged upon the expiration of six years from the date of conviction.

"And I hope you will take advantage of what they will try and do for you."

12. That this court did, upon receipt of the petition aforesaid, enter an Order for Hearing which provided as follows:

(a) That the petitioner be permitted to proceed in forma pauperis.

(b) That Michael J. Wyngaard, an attorney at Madison, Wisconsin, was appointed counsel for said petitioner.

(c) That in the interests of justice, the petitioner be present at the hearing, and a Writ of Habeas Corpus was issued to the Warden at the Federal Reformatory at Chillicothe, Ohio, directing him to produce said Frederick W. Rowe, Jr., before this court on the 1st day of April, 1964.

(d) That the court set the matter for hearing at Madison, Wisconsin, on April 2, 1964, at 10:00 o'clock a. m.

(e) That the court further notified the United States Attorney for the Western District of Wisconsin, and the United States Marshal for the Western District of Wisconsin, of these proceedings.

## CONCLUSIONS OF LAW

At the hearing held in this matter before this court, on April 2, 1964, the United States Attorney represented that the United States Government would not object to the motion to vacate the sentence. He bases his statement on the

fact that a Directive was issued by The Attorney General of the United States on March 20, 1964. The United States Attorneys were advised that in any case where the defendant is under twenty-six (26) years of age, and sentenced under the Youth Corrections Act, no opposition should be made to a motion to withdraw a plea of guilty in cases where the defendant was not advised properly of the consequences of sentence under the Youth Corrections Act before entering a plea of guilty.

Title 28 § 2255, of United States Code, provides as follows:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."

That under the statute, the court is unable to say that the allegations and record here "conclusively" show that the petitioner is entitled to no relief.

That the court is satisfied that at the arraignment the petitioner was not advised by the court as to maximum sentence provided for in violation of the instant statute.

The court further finds that the record discloses that at the time of sentencing, May 20, 1963, the full impact and consequences under the Federal Youth Corrections Act was not sufficiently explained to the petitioner.

That at the time of arraignment, the following colloquy took place between counsel for the petitioner and the court:

"THE COURT: I see.

"Mr. Brugger, you have had an opportunity of going over this matter with the defendant, Fred W. Rowe, Jr., have you not?

"MR. BRUGGER: Yes, sir, I have.

"THE COURT: And you have gone over the matter of the charge that is made against him, the possible defenses that he might have to this case, and the possible consequences if he were either found guilty or pleaded guilty?

"MR. BRUGGER: Yes, sir.

"THE COURT: Are you satisfied at this time that he is prepared to go forward, if he waives the Grand Jury proceedings, to enter a plea here this morning?

"MR. BRUGGER: Yes, I am, your Honor."

Our courts have consistently held that it is the responsibility of the Trial Judge to:

(a) Explain to the defendant the nature and substance of the charge.

(b) Determine that the defendant understands the charge.

(c) Determine that the plea is voluntarily offered without coercion or promise of reward.

(d) Inform the defendant as to the possible consequences of his plea of guilty, to-wit, *the maximum range of permissible punishment.*

(My emphasis)

Rule 11 of the Rules of Criminal Procedure reads as follows:

"Pleas

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty."

The court is satisfied that the plea was made voluntarily in this matter, but is not satisfied that the petitioner understood the nature of the charge which is provided for in Rule 11.

In Kercheval v. United States, 274 U.S. 220, at 223, 47 S.Ct. 582, at 583, 71 L.Ed. 1009, the court said:

"Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound."

Title 18 § 5017(c) provides:

"(c) A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction."

The petitioner was subject to maximum imprisonment of five years for violation of the Dyer Act and under the Federal Youth Corrections Act, 18 U.S.C.A. § 5005 et seq. was subject to a potential maximum sentence of 6 years confinement.

The record discloses that the defendant was advised that under the Federal Youth Corrections Act he would be unconditionally discharged upon the expiration of 6 years from the date of conviction, and that might be construed as adequate notice to the defendant of the implications of the sentence under the Youth Corrections Act.

However, standing alone and not having previously been advised at the time of arraignment that under the Dyer Act the maximum sentence would be 5 years, the effectiveness and validity of the court's statement as to the consequences under the Federal Youth Corrections Act are of little aid and comfort to the petitioner.

In the case of Pilkington v. United States, 315 F.2d 204, Fourth Circuit, the court did advise the defendant that he was subject to a five year maximum sentence under the particular crime charged but was not given a further explanation of the possible sentence under the Youth Corrections Act of 6 years. Defendant in that case was told that he "must be discharged on or before six years from this date." Defendant in that case was released conditionally and was then apprehended as a parole violator and returned to a Federal Penitentiary from which he made the petition for setting aside his conviction. The court said:

"Enough is shown to create a doubt concerning the voluntariness of the guilty plea."

The court further said:

"In the present case, on the other hand, Pilkington specifically alleges that he was misled by the Judge's statement that the maximum penalty could not exceed five years, whereas he is actually subject to six years under the sentence imposed."

In the instant case there was no mention of the maximum sentence under the Dyer Act at any time during the proceedings either at the arraignment or at the time of sentencing.

It has been said that certain "benefits" flow from the Youth Corrections Act compared to imprisonment otherwise provided by law for the same offense.

The court in the Pilkington case commented on that and said as follows:

"Its view seems to be that such confinement, even for a longer duration, being designed to rehabilitate and not to punish, is really not a penalty at all; therefore the defendant cannot complain if he was told nothing or even if he was misinformed about the range of penalties when his plea was accepted. We consider this view 'too narrow and formalistic.' Jones v. Cunningham, supra [371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285].

"As the majority opinion declares, the Act is based upon modern penological views and methods and aims at correction and rehabilitation rather than punishment. It is granted that it is constitutionally permissible to provide special procedures for sentencing youthful offenders, but this is beside the point: the point made is that the defendant was permitted to plead guilty under a misapprehension as to the penalties to which the plea subjected him. Rule 11, Fed.R.Crim.P., requires the judge to leave no room for such misapprehension. However looked at, the deprivation of liberty for a possible period of six years is a greater penalty than a sentence for a lesser period. Applying the euphemism 'treatment' to the discipline during confinement does not alter the arithmetic, and is immaterial for present purposes. In the Fifth Circuit case it was six years against one; in ours it is six against five."

The court, in Note 2, on page 208, stated:

"2. Of course, the statute (see n. 1 supra) requires a conditional release after not more than four years; but the defendant is then under supervision for two more years, and if he violates any condition of his conditional release, he may be returned to serve up to six years from the date of his conviction. Revocation of a release order does not require the same type of proof as is necessary to convict for a crime. The summary procedure is made possible because of the original sentence, which may run six years. It is through such procedure that Pilkington is now confined in the Federal Penitentiary at Lewisburg, without being reindicted."

The court said at page 209:

"Here we are dealing with actual confinement in an institution for a period which may run as long as six years. Six is indisputably more than five, notwithstanding any incidental difference in the disciplinary measures that may be taken. A statute designed for the benefit of youthful offenders should not be interpreted to diminish their rights under Rule 11, Fed.R.Crim.P., to which all defendants are entitled."

The court, in closing his decision said as follows:

"District judges in this circuit are strongly urged to explain the sentencing possibilities presented by the Federal Youth Corrections Act before finally accepting guilty pleas from youthful defendants and passing sentence under that Act. We recognize the practical inconvenience: the judge may not always know the defendant's age and eligibility when a plea is first tendered. But before the judge imposes a sentence upon a plea of guilty that may exceed the statutory limit applicable to an adult for the same offense, it is imperative that the youthful defend-

ant shall be aware of the range of sentences to which the plea exposes him. If he has pleaded in ignorance of the possibilities he should be permitted to withdraw his plea. Rule 11, which requires the judge to satisfy himself that a guilty plea is voluntary, cannot be interpreted to mean that anything less will suffice than a complete understanding of the possible sentence."

Title 18 § 2255, was enacted for a definite purpose.

In United States v. Hayman, 342 U.S. 205, at page 219, 72 S.Ct. 263, at page 272, 96 L.Ed. 232, the court said as follows:

"This review of the history of Section 2255 shows that it was passed at the instance of the Judicial Conference to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts. Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum."

The court in this instant case feels that under Section 2255 sufficient cause was shown to require the defendant to be present so that the court can determine the issues and make findings of fact and conclusions of law with respect thereto.

The court said in the Hayman case, supra, at page 220 of 342 U.S., at page 272 of 72 S.Ct., 96 L.Ed. 232:

"In requiring a 'hearing,' the Section 'has obvious reference to the tradition of judicial proceedings.' Respondent, denied an opportunity to be heard, 'has lost something indispensable, however convincing the *ex parte* showing.' We conclude that the District Court did not proceed in conformity with Section 2255 when it made findings on controvert-

ed issues of fact relating to respondent's own knowledge without notice to respondent and without his being present."

The court further said at page 223 of 342 U.S., at page 274 of 72 S.Ct., 96 L.Ed. 232:

"Whether the prisoner should be produced depends upon the issues raised by the particular case. Where, as here, there are substantial issues of fact as to events in which the prisoner participated, the trial court should require his production for a hearing."

The fact that the record discloses that the court inquired of counsel for the defendant as to whether he believed the defendant knew the nature of the charge is not sufficient compliance with Rule 11, Federal Rules of Criminal Procedure, Title 18 U.S.C.

In United States v. Lester, 2 Cir., 247 F.2d 496, at page 499, the court stated as follows:

"A mere routine inquiry—the asking of several standard questions— will not suffice to discharge the duty of the trial court. It is the duty of a federal judge before accepting a plea of guilty to thoroughly investigate the circumstances under which it is made. United States v. Davis, supra [7 Cir., 212 F.2d 264] Cf. Johnson v. Zerbat, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Kercheval v. United States, 1927, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009. *Even when the defendant is represented by counsel it has been held that the mere statement of the accused that he understands the charge against him does not relieve the court of the responsibility of further inquiry.* United States v. Davis, supra. When, as in the present case, the defendant appears before the court without the benefit of counsel an even more exacting inquiry is demanded. Comprehension of the charge demands more than familiarity with the crime alleged. The court must determine

whether the plea has been improperly induced by the prosecutor and whether the defendant is aware of 'the nature of the charges, the statutory offenses included within them, and the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309. Smith v. United States, 5 Cir., 1956, 238 F.2d 925. Such a determination may be made only by a *penetrating* and comprehensive examination of all the circumstances under which the plea is made."

(My emphasis)

In United States v. Davis, 212 F.2d 264, at page 267, Seventh Circuit, decided April 22, 1954, the court said as follows:

"We do not mean to say that a District Court must in every case follow a particular ritual in order to comply with Rule 11. A brief discussion with the defendant regarding the nature of the charges may normally be the simplest and most direct means of ascertaining the state of his knowledge. Or there may be other circumstances from which it is evident that the defendant has the requisite understanding. See Michener v. United States, 8 Cir., 181 F.2d 911, 918; United States v. Denniston, 2 Cir., 89 F.2d 696, 698, 110 A.L.R. 1296. Whatever the means employed, a fair compliance with the Supreme Court rule would insure that the defendant has the knowledge and understanding essential to a valid plea. Because the record here does not conclusively show that he had this necessary understanding the defendant is entitled to a hearing on his motion, and an opportunity to be present and to present evidence, if any, to support the allegations of his motion. At the conclusion of such a hearing on a substantial factual issue, such as we have here, the District Court *must* make findings of fact and state its conclusions of law. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232."

A leading case on this subject is Von Moltke v. Gillies, 332 U.S. 708, at page 724, 68 S.Ct. 316, at page 323, 92 L.Ed. 309, where the court said as follows:

"To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, *the range of allowable punishments thereunder*, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."

(My emphasis)

In a recent case decided February 7, 1964, in the Fifth Circuit, Romero v. United States, 327 F.2d 711, at page 712, the court emphasizes the importance of United States v. Hayman, supra, and the fact that it is the law to this date.

In the Romero case the court relied on Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 973, and the court in the Romero case said as follows:

"Years ago, in an opinion by the then Chief Justice Vinson, The Supreme Court, in United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, carefully canvassed this statute and laid down the guide lines which have never been, and cannot be, departed from. The Machibroda case, on which the memorandum opinion of the district judge relies, contains nothing to the contrary of that decision, indeed it cites and approves the Hayman case."

In view of the above findings of fact and conclusions of law:

It is ordered that the judgment of conviction of the petitioner, and the then defendant, entered as of May 20, 1963, be and hereby is set aside.