Jerome Dwight GLASS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 9636.

United States Court of Appeals Fourth Circuit.

Argued April 6, 1965.

Decided Sept. 30, 1966.

George C. Freeman, Jr., Richmond, Va. (Court-assigned counsel) [Hunton, Williams, Gay, Powell & Gibson Richmond, Va., on brief], for appellant.

William H. Murdock, U. S. Atty. (H. Marshall Simpson, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Chief Judge:

In this proceeding under 28 U.S.C.A. § 2255, the defendant attacks his sentence under the Federal Youth Corrections Act. He seeks to bring himself within the principle of Pilkington v. United States, 4 Cir., 315 F.2d 204, alleging that, when he tendered his guilty plea, he was not aware that he was being tried on other charges than an offense under the Dyer Act, and that the possibility of confinement under the Federal Youth Corrections Act was not explained to him. The petition was denied without a hearing, but on the basis of a substantial record in previous proceedings. Glass has appealed, and we affirm.

When twenty years old, Glass, a presentable, intelligent, but maladjusted, young man, was arrested on a state charge in Greensboro, North Carolina. Because there was some evidence of federal violations, agents of the Federal Bureau of Investigation were called in. After a short interview, Glass confessed to the F.B.I. agents to an offense under the Dyer Act,[1] to an unlawful impersonation of a member of the Armed Forces,[2] and to an unlawful interstate transportation of a pistol from which the serial number had been removed.[3]

Glass contacted a lawyer who advised and assisted him through the preliminary hearing stage, but he was not finally employed. After indictment for the three offenses, Glass was arraigned, but was represented at the time by a different lawyer appointed by the court. A guilty plea was tendered and accepted, and the proceeding continued until two days later. Two days later there was another

hearing, at the conclusion of which Glass was committed for observation and study under the Federal Youth Corrections Act.[4]

Two months later, Glass was returned from the period of study and observation at Petersburg, and again appeared before the court for sentencing. At that hearing, Glass was unrepresented, and stated that he did not wish a lawyer. He did object, however, to an indeterminate sentence under the Federal Youth Corrections Act. He wanted to be sentenced for a specific term, stating that he had been told in Petersburg that, if sentenced under the Youth Corrections Act, he would be held under that sentence for a full four years, after which he would have to serve a longer term as a California parole violator than otherwise would have been required. The District Court doubted the truthfulness of those representations, appointed yet another lawyer to represent Glass and directed an investigation of the circumstances underlying the representations Glass had made. Imposition of sentence was postponed, and the proceedings again were continued.

Ten days later, Glass, with his lawyer, was again brought before the court, at which time it was reported to the court that the officials of the federal institution at Petersburg had denied making any such representations to Glass. A sentence under the Federal Youth Corrections Act was then imposed upon Glass in accordance with § 5010(b).

The transcript of the arraignment proceeding indicates that the court, itself, did not inform Glass of the range of possible penalties that might be imposed upon him upon his plea of guilty. He was asked if he understood the possible penalties, to which Glass responded in the affirmative, but since the transcript of the arraignment proceeding contains an explicit reference to only one offense, the Dyer Act charge, Glass now alleges

1. 18 U.S.C.A. § 2312.

2. 18 U.S.C.A. § 912.

3. 15 U.S.C.A. § 902.

4. 18 U.S.C.A. § 5010(e).

that he thought he was pleading guilty to that offense only, the maximum penalty for which he knew to be only five years. Thus Glass seeks to bring himself within the *Pilkington* principle since, at the original arraignment proceeding, there was also no reference to the Youth Corrections Act.

Additional facts are to be found in a previous collateral proceeding.

Sometime after his final commitment, Glass sought a transcript of the arraignment and sentencing hearings, alleging that his plea of guilty had been coerced by threats and promises by F.B.I. agents. The District Court denied the petition for the transcript and, on appeal, we remanded the case,[5] holding that, while Glass had shown no need for the transcript, his petition should be treated as one for relief under § 2255, and that his allegations were sufficient to require a hearing.

Thereafter, the District Court appointed an able lawyer to represent Glass, and that lawyer was assisted by the senior partner of his firm, a widely known and experienced trial attorney. They were granted leave to file an amended petition and instructed to include in it all grounds of possible relief which Glass might have. An amended petition was filed, in which, in considerable detail, it was alleged that his confession was coerced and that he was induced to enter a plea of guilty by certain threats and promises made to him by F.B.I. agents. It was also alleged in some detail that, after the original arraignment proceeding, Glass changed his mind and decided that he would request leave of the court to withdraw his guilty plea, but that an F.B.I. agent came to see him and by a repetition of threats and promises induced him to abandon the motion for leave to withdraw the plea.

At the hearing on that petition, after three witnesses had testified, Glass undertook to withdraw his petition. He did so on advice of counsel, who explained to the court that they had discovered that a number of allegations in the petition were false, particularly in their time sequence, and that they had explained to Glass the possible consequences of proceeding with that hearing. Closely quizzed by the court, Glass expressed the wish to withdraw the petition and affirmed the absence of any influence upon him other than the advice of his two lawyers and the absence of any claimed infirmity in his plea or in his sentence.

The transcript of that proceeding, however, clearly establishes the fact that Glass did know that he was being tried for three offenses. He had confessed to the three offenses. His first lawyer discussed them with him. He had had a preliminary hearing. He was indicted for three offenses, and the lawyer who represented him at the arraignment testified that he discussed the three offenses with him in detail. This supplements the lawyer's statement at the arraignment that he had explained the indictment to Glass, and the admission by Glass that the lawyer had explained the accusations and charges to him. It forecloses the inference which Glass would draw from the arraignment proceeding itself, that the only offense at issue was that under the Dyer Act.

The record clearly discloses that Glass is not only intelligent, but a knowledgeable young man with a rather lengthy record. If he did not know of the possibilities of commitment under the Youth Corrections Act when originally arraigned, he knew of that two days later when committed for observation and study, and, before he was sentenced more than two months later, of course, he knew all about it. In his first collateral petition, he alleges that he was prevented by the F.B.I. from changing his plea. The claim of coercion was withdrawn as false, but there remains a sworn allegation that he knew of his right to ask leave of the court to withdraw the guilty

5.  United States v. Glass, 4 Cir., 317 F.2d 200.

plea which he might have done at any time before he was finally sentenced.

Glass was arraigned and sentenced before our decision in *Pilkington*. On that account, the transcript of the arraignment proceeding does not explicitly disclose that a maximum confinement of thirteen years might have been imposed upon Glass, nor was there any reference in that hearing to the Youth Corrections Act. Unlike the situation in *Pilkington*, however, it abundantly appears that Glass knew that sentences substantially exceeding six years might be imposed upon him, and he was well informed about the Youth Corrections Act long before the final sentence was imposed upon him. Since the court, unquestionably, would have granted a request for leave to change the plea at any time prior to final sentence, indeed had carefully explained to Glass that, under no circumstances, would it accept a plea of guilty from one who thought himself innocent, and since Glass knew of his right to ask for leave to change his plea, the initial deficiency in the arraignment proceeding was cured before the sentence was imposed. For those reasons, *Pilkington* does not require a vacation of this sentence.

The District Court denied relief on the ground that the files and records conclusively show that Glass was not entitled to it and, on the alternative ground, that relief is foreclosed under Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148. Since we affirm on the first ground, we need not decide the second. Whether this is a repetitious petition may present a rather close question. The first petition attacked the plea as involuntary because of coercion; the second attacks it as being involuntary, but on a very different factual premise. Whether the difference in the basis for attacking the plea as involuntary is the assertion of a different ground within the meaning of *Sanders*, however, we need not and do not decide.

Affirmed.