Petition of Herbert W. LEE.
No. 64-C-769.

United States District Court
E. D. New York.

July 24, 1964.

---

ZAVATT, Chief Judge.

Petitioner herein, Herbert W. Lee, an inmate of the Federal Reformatory in Chillicothe, Ohio, has made application to this court, pursuant to 28 U.S.C. § 2255, for an order vacating his sentence and conviction under the Federal Youth Corrections Act (hereinafter the Act), 18 U.S.C. § 5005 et seq., in United States v. Herbert W. Lee, 60-CR-193.

On May 12, 1960, the petitioner was charged in a three count information with the theft (Count 1), forgery (Count

2) and the passing (Count 3) of a United States Treasury check in violation of 18 U.S.C. §§ 1702 and 495. After conferring with his court appointed attorney, he waived indictment and entered a plea of guilty to Counts 1 and 3. Before accepting the pleas of guilty to these two counts, the court determined that they were made voluntarily with understanding of the nature of the charges, Rule 11 Fed.R.Crim.P., and with understanding that the sentences on said pleas could result in his incarceration.[1]

The petitioner, born November 18, 1937, was 22 years of age when he pleaded and when he was sentenced. His prior record began at age 11 when he committed burglary, was treated as a juvenile delinquent and placed on probation. He committed a similar offense at age 14 and, again, was placed on probation. Within six months thereafter he committed another burglary, was treated as a juvenile delinquent and placed on probation. When his probation was revoked, he was committed to the New York State

---

1. "Appearances:

> SAWAN, Esq.
> Assistant United States Attorney
> MORRIS BRILL, Esq.
> Attorney for the Defendant

\*

\* \*

\*

"THE CLERK: Herbert W. Lee.

"MR. BRILL: At this time, if your Honor please, after speaking to the Defendant and advising him of his rights and of the nature of the charges against him, the Defendant wishes to waive formal indictment.

"THE COURT: Mr. Lee, how far did you go in school?

"THE DEFENDANT: Eighth grade.

"THE COURT: Did you understand what waiving an indictment means?

"THE DEFENDANT: Yes, sir.

"THE COURT: Mr. Brill explained it to you?

"THE DEFENDANT: Yes, sir.

"THE COURT: You were here this morning when I explained it to the other people. You understand what it means?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. I will take it.

"THE CLERK: The waiver has been signed, your Honor.

"MR. BRILL: The Defendant offers to plead guilty to Counts One and Three.

"MR. SAWAN: Acceptable to the government, your Honor.

"THE COURT: Mr. Lee, do you understand what these charges are to which you are offering to plead guilty; and can you tell me in your own words, in plain English, what it is?

"THE DEFENDANT: Mail theft and forgery.

"MR. BRILL: What did you do with the check?

"THE DEFENDANT: Passed the check.

"THE COURT: One of the charges is that you passed or cashed a check that you knew was a forged check for One Hundred and Twenty-six dollars, payable to a man named Henry. That is, you are charged—you understand that?

"THE DEFENDANT:

"THE COURT: The other one you offered to plead guilty to also says you took a letter addressed to that same Henry Williams before it was delivered to him, and you opened it and embezzled it. You took the money out and spent it; is that right?

"THE DEFENDANT: Yes, sir.

"MR. BRILL: The check was in the letter, your Honor.

"THE COURT: Yes. All right.

"You know you don't have to plead guilty, don't you? You know you can plead not guilty. You have a right to a trial by a jury; you can subpoena witnesses, have a lawyer represent you. Do you know that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you know that by pleading guilty to these Counts you can be sent to jail?

"THE DEFENDANT: Yes, sir.

"THE COURT: Has anybody made any promises to you to induce you to plead guilty, or any threats or exerted any pressure on you whatsoever?

"THE DEFNEDANT [sic]: No, sir.

"THE COURT: You plead guilty of your own free will?

"THE DEFENDANT: Yes, sir.

"THE COURT: And you are doing it of your own free will, understanding what the charge is, understanding what the consequence could be and after conferring with your lawyer?

"THE DEFENDANT: Yes, sir.

"THE COURT: I will take the plea.

"MR. SAWAN: May 26, your Honor.

"THE COURT: May 26 for sentence.

(Whereupon the hearing was concluded.)"

Training School for Boys, Warwick, New York, where he was incarcerated from October 7, 1952 to April 12, 1954. On April 12, 1954, he was released on parole for a one week trial period. Two days thereafter he was arrested on a charge of attempted burglary in the 3rd degree. He was convicted on that charge in the Kings County Court, Brooklyn, New York, on or about July 19, 1954 and sentenced to serve a term of five years. He was released from the Elmira Reception Center, Elmira, New York, on April 25, 1959, when he was 21 years of age. Within one year thereafter he committed the crimes charged in Counts 1 and 3 of the above information and was apprehended within that one year period.

The maximum sentence under 18 U.S.C. § 1702 is a fine of $2,000.00 or imprisonment for a period of five years, or both. Under 18 U.S.C. § 495 the maximum sentence is a fine of $1,000.00 or imprisonment for ten years or both. The court considered the petitioner's background, his unfortunate childhood and the hopeful prospect of rehabilitation and concluded that it would be in his best interest to sentence him as a youth offender in lieu of the penalty of imprisonment provided by 18 U.S.C. §§ 1702 and 495. Accordingly, on May 26, 1960, the petitioner was sentenced under 18 U.S.C. § 5010(b) [2] to the custody of the Attorney General for treatment and supervision pursuant to the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq., and for release under supervision and discharge as provided in 18 U.S.C. § 5017(c).[3] As so sentenced, petitioner's maximum period in custody is four years followed by a maximum period of two years of supervision while at large under conditional release.

Petitioner now contends that this sentence must be vacated since: (1) the court failed to explain the provisions of the Act to him before accepting his plea; and that (2) "the misleading statements of the court clearly indicate such to be sufficient circumstances to vacate sentence." The sole authority cited by petitioner in support of these contentions is Pilkington v. United States, 315 F.2d 204 (4th Cir. 1963).

The instant application may be considered either as one in which the petitioner alleges an involuntary plea and seeks relief pursuant to 28 U.S.C. § 2255, or one seeking a withdrawal of the plea "to correct manifest injustice" under Rule 32(d) of the Federal Rules of Criminal Procedure. See Eller v. United States, 327 F.2d 639 (9th Cir. 1964); Pilkington v. United States, supra; Carter v. United States, 306 F.2d 283 (1962). In either event, the court, for the reasons hereinafter stated, considers it to be without merit.

In Pilkington v. United States, supra, the district court had advised the defendant that he was subject to a maximum of five years imprisonment for the particular crime charged and, after accepting his plea of guilty, subjected him to a possible six year term under the Act. In deciding that a hearing was required to determine the voluntariness of defendant's plea, the Fourth Circuit noted that:

"where, in petitions under 28 U.S.C.A. § 2255, it has been alleged that pleas of guilty were entered because the defendant was misled by state-

---

2. "§ 5010. Sentence
* * * * * * *
"(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter; * * *."

3. "§ 5017. Release of youth offenders
* * * * * * *
"(c) A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction."

ments of the presiding judge or prosecuting officials, or even under some circumstances of his own attorney, with regard to the nature of the charge or the possible penalty involved, hearings on such allegations have been ordered." 315 F.2d at 207.

In a similar case, Carter v. United States, supra, the Court of Appeals for the District of Columbia remanded the case to the district court to permit the petitioner to make a motion withdrawing his plea of guilty. There too, the district judge had sentenced the petitioner under the Act after informing him that the maximum sentence was one year, rather than the potential six years under the Act.

 The principle thus established in Pilkington is unquestionably correct—one who pleads guilty to a crime under an impression that it carries a given maximum sentence cannot be said to have "voluntarily" plead guilty when, in fact, the maximum sentence imposed is in excess thereof. This is true not only when the plea is a response to a misleading statement made by the presiding judge but also when the misconception has actually been created by petitioner's attorney, United States v. Davis, 212 F.2d 264 (7th Cir. 1954), the prosecuting attorney, Heideman v. United States, 281 F.2d 805 (8th Cir. 1960), or an investigating officer. Aiken v. United States, 282 F.2d 215 (4th Cir. 1960). In the instant case, however, the sentencing judge advised the petitioner that he could be sent to jail under his plea but did not specify any possible period of incarceration. In this respect it is similar to Meredith v. United States, 208 F.2d 680, 682 (4th Cir. 1953), where the court denied a motion to vacate a sentence because there was "no contention that the judge or the United States Attorney made any promises to him or misled him in any way." In light of this similarity it must be noted that the Pilkington court distinguished Meredith v. United States, supra, by saying that:

"In the present case, *on the other hand*, Pilkington specifically alleges that he was misled by the Judge's statement that the maximum penalty could not exceed five years, whereas he is actually subject to six years under the sentence imposed." 315 F.2d at 207. (Emphasis added.)

In passing upon this application the court must accept as true the allegations of fact contained therein except insofar as they may be contradicted by the record. United States v. Davis, supra. Despite petitioner's contention that he was misled by the court and, therefore, did not enter a voluntary plea of guilty, the record clearly indicates the absence of any misleading statements. Nor does the petitioner allege how and in what respect he was misled. The petitioner ignores the facts in this case and relies solely upon the determination in Pilkington unrelated to the particular facts in that case. The court finds upon the entire record in this case, that the pleas of guilty were made voluntarily.

 Similarly, it is apparent that there has been no such showing of manifest injustice as would warrant this court to afford petitioner relief pursuant to Rule 32(d) Fed.R.Crim.P. In both Pilkington and Carter the maximum sentence under the Act was in excess of that contained in the statutes to which the defendants plead guilty. In the instant case, however, the maximum sentence under the Act is considerably less than that provided for by the statutes which the petitioner violated. It can hardly be said then that the application of his voluntary plea to a lesser sentence has created a manifest injustice which must now be corrected, more than four years later, by permitting petitioner to withdraw his plea of guilty.

The petition to proceed in forma pauperis is granted. The application for the issuance of a writ of habeas corpus is denied.