**David Earl REAL, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. A. No. 1857.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Feb. 8, 1965.

David Earl Real, pro se.

JOHN E. MILLER, Chief Judge.

On February 1, 1965, the petitioner, David Earl Real, mailed to the Clerk of this Court a "Petition for Vacation and Relief of Sentence Under Authority of Section 2255 Title 28, U.S.C. In Forma Pauperis." The petitioner alleged that he was unable to prepay the costs of filing or offer security for same. The court, upon being advised by the Clerk of the receipt of the petition, entered an order on the same date, February 1, directing that the petition be filed without prepayment of costs.

There is included in the petition a motion "to allow his petition to be heard and to grant him a vacation of sentence and to liberate him because of the constitutional infringements existing in this case."

On April 4, 1963, the petitioner was brought before the court by the United States Marshal, and at that time the petitioner was fully advised of the nature of the charges against him and of his right to counsel at all steps in the proceedings. The petitioner stated that he desired the assistance of counsel, and the court appointed Mr. Douglas O. Smith, Jr., a member of the firm of Warner, Warner, Ragon & Smith, to represent the petitioner.

On April 8, 1963, the petitioner was again brought before the court by the United States Marshal, and the attorney, Mr. Smith, moved for additional time to further confer with the petitioner. The court postponed further action until April 10, 1963, and remanded the petitioner to the custody of the United States Marshal. On April 10, 1963, the peti-

tioner was again brought before the court, and the court was advised by his attorney that he desired to waive prosecution by indictment and to consent that further proceedings be by information instead of indictment. The petitioner and his attorney executed a formal waiver of indictment and consent to be prosecuted by information. Upon the execution of such waiver and consent the Assistant U. S. Attorney filed an information containing two counts, each count charging a violation by the petitioner of 18 U.S.C. § 2312. The case was docketed as Criminal Action No. 5878. Following the filing of the information and the docketing of the charge, the attorney advised the court that he had had an opportunity to examine the information, and the petitioner stated that after conferring with his attorney, he thoroughly understood the charges against him.

Count 1 of the information charged that the petitioner (defendant) on or about February 5, 1963, transported in interstate commerce from Booneville, Arkansas, to Moffett, Oklahoma, a certain Chevrolet automobile (properly described in the information), the property of Naomi Soloman, Waldron, Arkansas, knowing the vehicle to have been stolen in violation of 18 U.S.C. § 2312. In Count 2 the petitioner (defendant) was charged with transporting on or about June 26, 1962, a certain Pontiac automobile (therein fully described from Booneville, Arkansas, to near Spiro, Oklahoma, knowing the same to have been stolen in violation of 18 U.S.C. § 2312.

After the petitioner himself, as well as his attorney, advised the court that he fully understood the charges, the court stated:

"Now, the effect of a plea of guilty or conviction upon those charges could result in a fine of not more than $5,000.00 or imprisonment of not more than 5 years or both on each one of the charges or each one of the counts, I will put it that way. Now, having had the charges explained to you and the possible effect of a plea of guilty or conviction upon them, what is your plea, Mr. Real?"

To that question the petitioner stated:

"On Count 1, I would like to plead not guilty and on Count II, I would like to plead guilty."

After that statement was made the court asked his attorney if what the defendant stated was what he wanted to do, to which Mr. Smith answered, "Yes, sir." Then the following proceedings occurred:

"THE COURT: Let me ask you this, Mr. Real. Has anybody since your arrest or at any time, have they made any threats of violence against you or have they done anything that would intimidate you into pleading guilty or compelling you in any way to plead guilty?

"MR. REAL: No, sir.

"THE COURT: Has anybody made any promises of probation or special consideration or leniency in order to persuade you to plead guilty?

"MR. REAL: No, Your Honor.

"THE COURT: Then is it correct you are pleading guilty to Count II of your own free will and accord?

"MR. REAL: Yes, sir.

"THE COURT: Because you are in truth and in fact guilty?

"MR. REAL: Yes, sir.

"THE COURT: Mr. Smith, do you understand that to be true?

"MR. SMITH: I do, Your Honor."

The court then stated that the plea of guilty to Count 2 was accepted and the defendant found guilty of Count 2 as charged in the information.

The Assistant U. S. Attorney stated that he desired to dismiss Count 1, which was done. The court postponed sentence of the petitioner until a later date or until the presentence report could be prepared by the Probation Officer and examined by the court.

On April 12, 1963, the petitioner was returned to the court room accompanied by his attorney, Mr. Smith. The petitioner was advised that the presentence report had been received and that because of the contents of the report, the court had permitted his attorney to examine the same. Present in the court room were the parents of the petitioner. The court advised the petitioner and his attorney that in view of the facts contained in the presentence report, probation would not be granted, and proceeded to advise the petitioner and his attorney that the court was of the opinion that for the best interest of the petitioner he should be sentenced under the provisions of the Federal Youth Corrections Act, and read to the petitioner and his attorney 18 U.S.C. § 5010(b):

"If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter."

After reading the statute, the court stated:

"Now that means this, I am simply sentencing you without any definite date to the custody of the Attorney General for treatment and supervision under the Youth Correction Division which is set up by this particular statute."

The court further explained some of the procedures that would be followed by the Division.[1]

1. "THE COURT: Now, if you don't take advantage of that situation in which you will be placed, frankly, I don't know the answer except just plain commitment to prison. You are 20 years old. Your life is entirely before you. You can't go on as you have been going—you just can't go on that way. You have got to wake up—you have got to come to yourself. If there is anything organically or otherwise wrong with you they will find it. But let me tell you—they can't do it all. You have got to make up your mind that you are at the crossroads. You can take either fork of the road that you desire, one leading to a life of crime and a life of confinement in prison, the other leading to a life of happiness as an ordinary citizen, but you have got to wake up and you have got to realize that there is an obligation on your part, that there are responsibilities upon you that you have got to determine to lay aside those thoughts and those actions on your part.

"Do you know of any reason now why the judgment of the court should not be pronounced. I have gone a long way trying to explain to you what it is. Do you know of anything, Mr. Real?

"MR. REAL: No, Your Honor.

"THE COURT: Do you want to make any statement to the court, Mr. Real, about the case in any manner?

"MR. REAL: No, sir, Your Honor.

"THE COURT: Or any statement of mitigation upon the part of the defendant?

"MR. REAL: No, sir.

"THE COURT: It is going to be the judgment of the court—in other words, it is the judgment and sentence of the court that you are a youth offender under the age of 22 years, and that you are sentenced to the custody of the Attorney General for treatment and supervision pursuant to the provisions of Title 18 U.S.Code until discharged by the Division as provided by Section 5017 (c) of the chapter.

"Now, I hope that you will think about what I have said to you. I am not talking just to take up time. I am talking because I have been here 22 years on this bench. I have seen some wonderful things happen to boys and girls. I still have hopes that it can happen to you and that you can come out of that institution as any other boy should. You have an excellent work record here. You worked here in Fort Smith for awhile and your employer said your work was good—very satisfactory, but this old urge came on you so there you

The defendant was formally "committed to the custody of the Attorney General or his authorized representative for treatment and supervision pursuant to Chapter 402, Title 18, U.S.Code, as authorized by Section 5010(b) thereof, until discharged by the Youth Correction Division as provided in Section 5017(c) of said Chapter."

The official transcript of the court reporter discloses that the court in the discussion with the defendant stated:

"That they have a right if they desire and if the facts justify it to conditionally release you within one year but they may retain you six years if it is necessary—no, they may retain you four years if necessary."

It would appear from this statement that the court did not fully explain the provisions of Section 5017(c). It provides that a youth offender committed under 5010(b) shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction. In other words, the court did not state that the discharge which petitioner would be entitled to at the end of four years might be a conditional discharge.

The petitioner contends "that the sentence of from sixty (60) days to six (6) years is in excess of the penalty prescribed by statute. See: 2312 Title 28, U.S.C. Chapter 113," and that when he appeared before the court he was not aware that he could be given a sentence of a maximum of more than five years. He then cites and relies upon Pilkington v. United States, (4 Cir.1963) 315 F.2d 204, in which the court at page 210 said:

"District judges in this circuit are strongly urged to explain the sentencing possibilities presented by the Federal Youth Corrections Act before finally accepting guilty pleas from youthful defendants and passing sentence under that Act. We recognize the practical inconvenience: the judge may not always know the defendant's age and eligibility when a plea is first tendered. But before the judge imposes a sentence upon a plea of guilty that may exceed the statutory limit applicable to an adult for the same offense, it is imperative that the youthful defendant shall be aware of the range of sentences to which the plea exposes him. If he has pleaded in ignorance of the possibilities he should be permitted to withdraw his plea. Rule 11, which requires the judge to satisfy himself that a guilty plea is voluntary, cannot be interpreted to mean that anything less will suffice than a complete understanding of the possible sentence."

At the time the petitioner was arraigned, the court was not advised of his education, background, and prior record. The only source of information available to the court is obtained by questioning the defendant himself and from the pre-sentence report.

Rule 32(c) (1), Federal Rules of Criminal Procedure, provides:

"The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty."

went. Those are your problems. I hope that you will actually and earnestly and truly think about them and pray for a little help from the Supreme Being that is able to help you. But He can't help you unless you help yourself. You have got to help yourself. Now that is your situation and I want to wish you well when you go to that institution. Go in there with the determination of bettering yourself and coming out and act as a young man ought to. Mr. Smith, I am much obliged to you. "I will say this to you. Mr. Smith has been very zealous in going into your case. He has explored every avenue of it and every lead. I feel like you ought to be under obligations to him because he has been of real service to you and the court."

When the report was received the court felt that the attorney representing the defendant should be advised of the contents thereof, and prior to the sentence the petitioner was fully advised of the reasons why the court believed that a sentence under the Youth Corrections Act would be more beneficial to him than a sentence under Title 18 U.S.C. § 2312, the statute he was charged with having violated. No protest of any kind was made by the petitioner or by his attorney, who is considered by all who know him and particularly the courts to be diligent, efficient, and zealous in the discharge of his duty to any client whom he undertakes to represent.

The court has examined all of the decisions cited by the petitioner in support of the petition, as well as many others in an effort to determine whether the petitioner has been deprived of any right that he had by the action of the court in sentencing him under the Youth Corrections Act rather than under Title 18 U.S.C. § 2312, and has reached a conclusion that the petitioner has not been deprived of any rights and that he and his attorney were fully advised prior to the pronouncement of the sentence that it would be under the Youth Corrections Act and no objection of any kind was made. "There is no requirement that the accused be told what sentence will be imposed." Smith v. United States, (1963) 116 U.S.App.D.C. 404, 324 F.2d 436.

In Cunningham v. United States, (5 Cir.1958) 256 F.2d 467, the court at page 471 said:

"As pointed out in the Government's brief, the Youth Corrections Act applies to convicted persons under the age of twenty-two years at the time of the conviction and is designed to provide such persons with correctional treatment looking to their complete rehabilitation in lieu of punishment, that is with preventive guidance and training, and all of its provisions are designed, enacted and enforced with that end in view."

The defendant in the Cunningham case contended that the act is unconstitutional and that the sentence is invalid as depriving him of due process. The court in discussing the contention at page 472 said:

"It is unfounded in fact because the record affirmatively establishes: that the defendant voluntarily waived counsel and entered his plea, stating to the court the circumstances of the offense; and that, carefully advised by the court of the existence and benefits of the Youth Corrections Act and his opportunity to receive its benefits by being committed as a youthful offender 'in lieu of the penalty of imprisonment otherwise provided by law'; defendant did not object but tacitly assented thereto. It is unfounded in law because the act is based upon modern and improved penological views and methods, not merely of crime and its punishment but of correction and rehabilitation also, including the extension and new application, in the field of youth corrective penology, of the theory of, and the provisions for indeterminate sentences, long in force and accepted in nearly all of the states. It, therefore, provides for and affords youthful offenders, in the discretion of the judge, not heavier penalties and punishment than are imposed upon adult offenders, but the opportunity to escape from the physical and psychological shocks and traumas attendant upon serving an ordinary penal sentence while obtaining the benefits of corrective treatment, looking to rehabilitation and social redemption and restoration. General in its scope and without limitation, if the power of Congress to provide for correctional, as well as punitive, treatment of offenders is conceded, as we think it must be, no constitutional reason presents itself why Congress could not, indeed should not, make the general distinction made here between the

treatment of persons over and those under twenty-two years of age, a distinction long embodied in the law in connection with reform and training schools and other similar measures provided for young offenders. Indeed, the provisions made in the act seem natural and. reasonable."

In Rawls v. United States, (5 Cir. 1964) 330 F.2d 777, the court at page 778 stated:

"Appellant's contention that the trial judge erred in failing to inform him of the possible six year sentence under the Youthful Offenders Act has been determined against him by a prior decision of this court dealing with identical facts, Cunningham v. United States, 256 F.2d 467 (5th Cir.1958). It suffices to say that here, as in the Cunningham case, a defendant was informed of a lesser sentence as an adult offender, he pleaded guilty, then after being 'carefully advised by the court of the existence and benefits of the Youth Corrections Act and his opportunity to receive its benefits by being committed as a youthful offender "in lieu of the penalty of imprisonment otherwise provided by law", defendant did not object [to a sentence under that act] but tacitly assented thereto.' Cunningham v. United States, 256 F.2d 467, 472 (5th Cir.1958). It is even easier to find tacit assent in this case than in Cunningham since appellant here was sentenced to an indeterminate

sentence under the Youthful offenders Act while the defendant in Cunningham was given no indication of the length of his sentence as a youthful offender."

See, also, Marvel v. United States, (5 Cir.1964) 335 F.2d 101; In re Lee's Petition, (E.D.N.Y.1964) 232 F.Supp. 415; Carter v. United States, (1962) 113 U.S.App.D.C. 123, 306 F.2d 283.

In both Lee and Carter there was a question as to whether the court had complied with Rule 11, Federal Rules of Criminal Procedure. In the instant case no such question arises. The petitioner alleged that he "entered a plea of guilty of violation of Section 2312, Title 28, U.S.C., Chapter 113." In totality the contentions of the petitioner are that the sentence is void as being in excess of the maximum sentence that he could have received under 18 U.S.C. § 2312. He does not ask for a new trial. He only asks that the court "allow his petition to be heard and to grant him a vacation of sentence and to liberate him because of the constitutional infringements. existing in this case." When all of the decisions relative to the questions raised herein are considered and applied to the facts in the instant case, the court is convinced that the petition is without merit and that this court would not be justified in vacating the sentence.

In the "reasons for granting the petition" the petitioner refers to a letter which he addressed to this court on October 6, 1964, and the reply thereto.[2]

2. In the letter of petitioner, he stated: "I would like to ask you to review my case and give me a time cut to time served or set this sentence aside and give me a retrial on the grounds of: "1. Improper sentencing in that I was given a 60 to 6 year sentence on a charge carrying the maximum of 5 years. "2. Misinterpretation of sentence. You sentenced me to a one-year minimum, 4-year maximum, Youth Corrections Act. Upon beginning my sentence at the Federal Institution, El Reno, Oklahoma, the authorities informed me that the Youth Corrections Act was a 60-day to 6-year sentence which I sentenced to. They took me up for parole after the first 60 days and gave me 18 months until I would be eligible to be taken up for parole again. Your sentence of 1 to 4 years would make my maximum release date 4–11–67 while the sentence the prison is enforcing upon me doesn't have a maximum until 11–11–69. "3. Nonexplanation of sentence. The sentence was not explained beyond that I had a Youth Corrections Act with a year minimum 4 year maximum sentence to be done at any Federal Institution that was deemed appropriate.

The petitioner in his argument stated:

"The key to the discretion that the court may exercise in these cases appears to be, in the statement quoted above by this court and underscored by petitioner ('would benefit more by imprisonment under the Youth Offenders Act'). Petitioner wishes to point that he benefits no more under a Youth Offenders Act sentence 5010(b) than he does under the adult sentence prescribed by the statute violated. In fact he would have benefited more under the adult sentence. In arguing this point petitioner wishes to bring certain facts into proper focus and certain policies of the so called 'Youth Correction Division' to the court's attention.

"Petitioner is incarcerated in an institution (U. S. Penitentiary, Terre Haute, Indiana) where the average age is 33 years, where less than 20% of the population are serving sentences imposed under the Youth Correction Act, where no special or preferential treatment is offered either group. The purpose of the Youth Correction Act is to correct and guide by treatment. Certain institutions may be equipped to carry out this policy. However the U. S. Penitentiary at Terre Haute is not.

"Petitioner as a youth offender and serving a sentence under the Youth Correction Act is entitled by law, to that treatment prescribed by that particular act. He is not receiving it. Therefore petitioner contends that the sentence imposed by this court is invalid on its face and due process of law is not being fulfilled.

"In an institution, such as the petitioner is incarcerated, where approximately 80% of its population are serving adult sentences the policies and prescribed treatment of that institution could hardly be geared to serve and treat its small percentage of Youth Offenders sentenced under 5010(b) of Title 18, U.S.Code."

The presentence report discloses that on February 12, 1957, at age 13 the petitioner ran away from home because he was corrected by his teacher, and was found in Oklahoma City ten days later. In August 1957 he stole an automobile in Booneville, Ark., by wiring around a switch. He was placed on probation by the Logan County Court. On September 1, 1957, he stole a new revolver from a neighbor and ran away. He stole a 1957 Oldsmobile at Fort Smith, Ark., and drove away from a service station without paying for gasoline. He wrecked the car 30 miles south of Fort.

"The courts in various parts of the country have upon the strength of any one of these discrepancies given time cuts or dismissals. I received my sentence 4–11–63. I still have the 8 state warrants pending my release."

In the answer of the court to that letter, the court, after advising the petitioner of the provisions of Sections 5010(b) and 5017(c), stated:

"It appears from your letter that you have not entirely conformed to the prison regulations and, therefore, your first application for parole was rejected, but apparently the authorities would like to help you because they have provided that you may be subject to parole after 18 months, but under the law you could be detained for four years at which time you would be conditionally discharged and if you violated the term of your conditional discharge you could be recommitted to serve an additional two years or a total of six years.

"Thus it appears that you will be subject to a conditional discharge at the end of four years, or on April 11, 1967, but unless you conform to the prison regulations and evidence a disposition to comply with the law upon your discharge, your discharge after 4 years would be a conditional one as above explained.

"Therefore, it is largely up to you to determine just how long you will be detained, and I find nothing wrong with the sentence in any manner. I feel sure that the authorities will correctly interpret the sentence as above explained."

242

Smith and hitchhiked to Texarkana, Ark., where he stole another car. He was arrested in Miller County, Ark., and returned to Logan County, Ark., where on September 15, 1957, he was sentenced to the Boys Industrial School at Pine Bluff, Ark. Three weeks later he escaped and went to Texas, California, and Arizona, where he was arrested and returned to the Boys Industrial School from which he was released on February 22, 1958. In September 1958 he was sentenced by the Logan County Circuit Court at Booneville, Ark., to the Boys Industrial School for breaking and entering, robbery, and issuing checks, theft of hub caps, etc. He escaped from the Industrial School on November 22, 1958, and stole a car at Pine Bluff, Ark. He wrecked the car and was sentenced to the Arkansas State Penitentiary for one year. He was paroled on July 4, 1959, to the Mississippi County Union Mission at Batesville, Ark. After one week he ran away and went to Paragould, Ark., where he was employed by Red Crawford. He called his parents and advised them that he was getting along fine with Mr. Crawford and that he was lending him his automobile to visit them. He did visit his parents at Booneville for about three hours and left Booneville after his father gave him a tank of gasoline and $10.00. He had advised his parents that he was returning to Paragould. Later his parents were advised by Mr. Crawford that he had stolen the car that he was driving and had also stolen a revolver.

On September 18, 1959, he appeared in the Federal Court at Muskogee, Okla., charged with violation of the Federal Juvenile Delinquency Act by transporting in interstate commerce a stolen vehicle. He had stolen a 1958 Mercury from a dealer at Paragould, Ark. He was sentenced to three years on the charge and was delivered to the Federal Correctional Institution at Englewood, Colorado, and later transferred to the Federal Reformatory at El Reno,

Okla., on December 15, 1959. He was released on parole to the Western District of Arkansas on November 15, 1961. His parole period would have expired on September 17, 1962, but he left the Western District without permission in April 1962 and a parole warrant was issued on June 5, 1962. He was a fugitive until February 20, 1963. There are a great many acts which could be recited, including the eight warrants for burglary and grand larceny in Logan County, Arkansas, which warrants were filed by the law enforcement officers of Logan Couny, Arkansas, as detainers on May 7, 1963.

Following the sentence of the defendant under the Youth Corrections Act, the Federal Reformatory at El Reno, Okla., was designated as the institution to which he should be delivered. He was delivered to the institution on April 19, 1963. On September 3, 1963, he was transferred to the United States Penitentiary, Terre Haute, Indiana, as he was suspected of planning an escape from El Reno. It appears that he had been out on a work detail and planned to escape. He was given close custody status at Terre Haute and remains on that status to date.

The court is convinced that no injustice has been done the petitioner; that he voluntarily entered a plea of guilty to the information charging a violation of 18 U.S.C. § 2312; that he was entirely satisfied with the sentence under the Youth Corrections Act until he was transferred by the prison authorities to the United States Penitentiary at Terre Haute, Indiana.

After considering all of the facts as reflected by the record and as hereinbefore set forth, and applying to those facts the law as announced by other courts that have considered similar questions, the court is convinced that the petition should be overruled and denied, and an order overruling and denying said petition is being entered today.