IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

FEBRUARY, 1997 SESSION

FILED

August 15, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9508-CR-00263 |
| | ) | |
| vs. | ) | Davidson County |
| | ) | |
| ANTONIO DEMONTE LYONS, | ) | Honorable Thomas H. Shriver, |
| | ) | Judge |
| | ) | |
| Appellant. | ) | (Withdrawal of Guilty Plea) |

FOR THE APPELLANT:

CHARLES GALBREATH
211 Union St., Suite 901
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

EUGENE J. HONEA
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

VICTOR S. JOHNSON, III
District Attorney General

WILLIAM REED
Assistant District Attorney General
Washington Square, Suite 500
222 Second Ave. N.
Nashville, TN 37201-1649

OPINION FILED: _____

**AFFIRMED IN PART AND VACATED IN PART AND REMANDED**

CURWOOD WITT,
JUDGE

OPINION

The appellant, Antonio Demonte Lyons, pleaded guilty in Davidson County Criminal Court to second-degree murder, a Class A felony, for which he received a Range II sentence of forty years. He now appeals from the trial court's order denying his motion to set aside his guilty plea. He contends that the trial judge erred

1.    by instructing a minor defendant that he could be sentenced to death if he did not plead guilty;

2.    by finding that the plea of guilty was not influenced by fear and misunderstanding;

3.    by finding that the state had provided an accurate factual basis to sustain a conviction; and

4.    by finding that the defendant was adequately represented by counsel.[1]

The gravamen of appellant's complaint is that the trial judge abused his discretion in denying appellant's motion to withdraw his guilty plea and that, but for the ineffectiveness of counsel, he would have insisted on going to trial.[2]

---

[1] The appellant also raises the issue of his eligibility for bail pending appeal. This issue was resolved on June 24, 1996, when this court denied appellant's motion for bond.

[2] The state contends and we acknowledge that the appellant failed to file a timely notice of appeal in this case. The trial court denied the motion to withdraw his guilty plea on Friday, June 9, 1995. The notice of appeal was filed thirty-three days later on Wednesday, July 12. Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that a notice of appeal must be filed within thirty days of the judgment. However, the rule also provides that in criminal cases the thirty-day period is not jurisdictional and "may be waived in the interest of justice." Tenn. R. App. P. 4(a). In this instance, we disregard the untimely filing of the notice of appeal and consider the case on its merits.

For the reasons discussed below, we affirm the judgment of the trial court in part and remand this case for further findings and/or proceedings.

The events leading to appellant's acceptance of a plea bargain were vigorously disputed, and we must discuss them in some detail. This case arose out of the death of thirteen-month-old Alexandria Gleaves, the daughter of appellant's girl friend, who died on December 13, 1993 as result of internal bleeding caused by blunt trauma to the abdomen. The appellant, who was seventeen years old, was arrested in connection with her death. He waived his rights in juvenile court and was indicted for first-degree murder on June 20, 1994. The trial court found that the defendant was indigent and appointed the public defender's office to represent him.

Between August, 1994, and April, 1995, the case was before the trial court seventeen times. At least eight of these occasions were appearances on the settlement docket.[3] Prior to a plea agreement being made, counsel spoke to Mr. Garey Lyons, the appellant's father, and encouraged him to talk to his son about accepting the plea bargain which had been on the table for several weeks. The state had offered to accept a plea for second-degree murder in exchange for an agreed Range II sentence of forty years. Defense counsel testified that, although the appellant had never admitted his guilt, he had indicated that he would consider pleading guilty if the sentence were reduced to thirty years. The appellant had, however, repeatedly declined the current offer. Because facilities for personal interviews were not available at the courthouse, Mr. Lyons sent a message to his

---

[3] The eight settings on the settlement docket were September 29, November 11, December 12, 1994, and January 6, February 21, 28, March 14, and April 4, 1995. The last date was the date the plea was entered. The record reflects there was confusion about the date scheduled for determining the status of the plea, the defendant believing erroneously on April 4, 1995, that the last status date would be a few weeks later.

son urging him to plead guilty, and the appellant agreed.   The trial court accepted the plea and imposed sentence on that day, April 4, 1995.

On May 3, 1995, the appellant, who had retained new counsel, filed a "Motion to Withdraw Plea and to Set this Case for Trial".  The trial court held an extensive, nine-hour evidentiary hearing on the motion on June 9, 1995.   Garey Lyons, testified that defense counsel had told him that if his son insisted on going to trial he could receive the death penalty or be sentenced to life without parole. Phylis West, the Director of the Employee Assistance Program for Nashville's Metropolitan Government, testified that she was present at a meeting in which she believed defense counsel mentioned a possibility that the case could not be won at trial and that the jury could impose  the death penalty.

The appellant testified that he did not commit the crime and pleaded guilty only because his father told him he should.  He said that his attorney had made it clear that he could not win at trial and that he could be sentenced to life without parole or otherwise subject to a minimum confinement of  twenty-five calendar years.

Paul Newman, the assistant public defender who represented the appellant during the plea negotiations, testified.  Newman stated that he told the appellant and his father numerous times that, as a juvenile, appellant was not eligible for the death penalty.[4]  He also explained to them that, since the state had

---

[4]     Tennessee Code Annotated section 37-1-134(a)(1)(1996) provides that no "child transferred under the provisions of this section [dealing with the transfer of cases from juvenile court to criminal court] [may] receive ... a sentence of death for the offense for which the child was transferred." See also Tenn. Code Ann. section 39-13-208(a), (c)(Supp. 1996); Tenn R. Crim. P. 12.3(b).

not provided the required notice, the defendant could not be sentenced to life without parole.[5]  He testified that he had carefully explained that if the appellant were convicted at trial of first-degree murder he would have to serve a minimum of twenty-five years before he would be eligible for parole.  Newman explained that the state's offer to agree to a plea of guilty to murder in the second degree upon a Range II sentence of 40 years had been conveyed to the appellant several weeks before April, 1995.[6]  Newman formally conveyed the offer with explanatory information by letter dated March 1, 1995.  On or about March 4, 1995, Newman met with the appellant and the appellant's father and told the appellant that he would not allow the appellant to plead guilty if the appellant told him he was not guilty.  Newman testified that when he left that meeting, appellant's father told him that the appellant and his father would discuss the offer and make a decision.  Newman also testified that he fully discussed the plea with the appellant who signed the plea petition in which he waived his constitutional rights and agreed to be sentenced as a Range II offender prior to the hearing in the courtroom on April 4, 1995.

The transcript of the guilty plea submission hearing was entered into evidence at the hearing and is part of the record on appeal.  The record reveals that, after the appellant acknowledged his counsel had discussed the guilty plea, the

---

[5]     Tennessee Code Annotated section 39-13-208(b) (Supp. 1996) provides that, when in a capital case the state intends to seek life imprisonment without possibility of parole, "written notice thereof shall be filed not less than thirty (30) days prior to trial."  If such notice is filed "later than this time, the trial judge shall grant the defendant a reasonable continuance of the trial."  Id.  It is evident from the language of this subsection that the state's ability to seek a life sentence without possibility of parole was transitory rather than permanent in nature.

[6]     The appellant testified he first received the terms of the offer in 1994.

trial judge, the assistant district attorney, and defense counsel engaged in the following discussion:

> The Court: All right. Mr. Lyons, uh -- you are charged with first degree murder of -- uh -- Alexandria Gleaves on December 13th 1993. I've forgotten . . . . the supreme court did something about this -- this child abuse murder statute. Is -- <u>does it still carry the death penalty or did they hold that it does not?</u>

> Mr. Newman: Your Honor, I -- <u>it's my understanding that it carries the death penalty for typical first degree murder.</u>

> General Statom: That's my understanding, also . . . . And I believe under the new statute -- uh -- you can have the death penalty under it, and it only has to be one incident other than . . . .

The trial court then advised the defendant:

> The Court: Okay. <u>Mr. Lyons, if -- if you were convicted of this case, had a trial, you could get the death penalty or you could get a life sentence with no possibility of parole or a life sentence which means at least twenty-five years to serve without -- in order (sic) words, twenty-five years before you would be considered for parole.</u> Those are the three possibilities if you were convicted of the crime you're charged with committing. Now, do you understand that?

> Lyons: Yes, sir.

> The Court: Mr. -- did Mr. Newman explain all that to you?

> Lyons: What did you say?

> The Court: Did Mr. Newman explain all these possible punishments to you?

> Lyons: Yes, sir.

(Emphasis added).

The trial judge went on to explain the plea bargain sentence and repeated twice that the appellant, if he were convicted of first-degree murder, could receive either the death penalty, life without parole, or life in prison. At no time did the trial court or the attorneys state that, because the defendant was a juvenile and

6

the state had not provided the requisite notice, the only sentence that could be imposed in a conviction for first degree murder would be life in prison. The trial court advised the appellant of his constitutional rights as required by Rule 11, Tenn. R. Crim. P. Then, the assistant attorney general stated that the defendant had caused the injuries to the thirteen-month old victim while she was under his exclusive control and that the offense occurred on December 13, 1993, in Davidson County. After determining the number of days the appellant had already served, the trial court accepted his plea.

At the conclusion of the hearing on the motion to withdraw the plea, the trial court found as follows:

1. The state had made no misrepresentations and had committed no fraud that might have induced the plea.

2. The only problem was the discussion of the death penalty at the submission hearing.

3. Defense counsel had informed the appellant and his father of the fact that the appellant was not eligible for the death penalty because he was a juvenile, and that the state could not seek life without parole because it had not provided timely notice.

4. The factual basis for the plea was substantial.

5. The appellant was laboring under no misapprehensions when he pleaded guilty to second-degree murder.

6. The appellant had received effective assistance of counsel during the negotiations leading up to the acceptance of the plea.

The trial judge, with the complicity of the assistant district attorney general and with at least the acquiescence of defense counsel, stated that he essentially viewed the appellant's motion to withdraw his guilty plea as a petition for post-conviction relief. The trial court then treated the motion as a post-conviction petition and "denied" same based upon the general findings summarized above. The trial court (and trial counsel) made no reference to Rule 32(f) of the Tennessee Rules of Criminal Procedure.[7]

The appellant on this appeal seeks to withdraw or set aside the guilty plea because (1) the appellant received ineffective assistance of counsel and/or (2) the trial court should have otherwise allowed the withdrawal of the plea presumably based upon Rule 32(f), Tenn. R. Crim. App.[8] We examine these two issues separately. We reach the merits of the ineffective assistance of counsel claim and affirm the trial judge's determination that there was no ineffective assistance of counsel that would taint the guilty plea. With respect to the general attack upon the guilty plea, however, we find that the trial court and trial counsel misapprehended the nature of the proceeding, resulting in a failure of the trial court to apply the appropriate standard in assessing the appellant's claim. For reasons explained

_____

[7] The trial court did refer to grounds for withdrawal of guilty pleas as recognized in Swang v. State, 42 Tenn. 212 (1965) and State v. Davis, 823 S.W.2d 217 (Tenn. Crim. App. 1991). Davis does mention Rule 32(f), but Davis held that manifest injustice existed under Rule 32(f) so as to support the withdrawal of a guilty plea in that case because of a failure of the state to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963). The trial court focused upon issues of prosecutorial misconduct or misrepresentation, and perhaps the existence of fear that would vitiate the decision to plea, rather than the larger standard of manifest injustice that Rule 32(f) prescribes. See section II of this opinion, infra.

[8] Not only was Rule 32(f) not mentioned in the trial court, but appellant's counsel on appeal mentions neither Rule 32(f) nor Rule 11 in his brief.

below, we vacate the order overruling the motion and remand the case to the trial court for further proceedings consistent with the scheme of Rule 32(f) and with the guidance offered in this opinion.

## I. Effective Assistance of Counsel.

When an appeal challenges the effective assistance of counsel, the appellant has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. Strickland v. Washington, 466 U.S. 668, 686 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel provides assistance that falls below the range of competence demanded of attorneys in criminal cases. Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994). On review, there is a strong presumption of satisfactory representation. Barr v. State, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995). As to guilty pleas, the petitioner must establish a reasonable probability that, but for the errors of counsel, he would not have entered into the plea. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994); Wilson v. State, 899 S.W. 2d 648, 653 (Tenn. Crim. App. 1994).

In the direct appeal now before us, the appellant claims his trial counsel rendered ineffective assistance in that he failed to investigate the case fully and misinformed the appellant as to the possibility of him receiving the death penalty.

9

The complaint about counsel's investigation centers around counsel not interviewing the victim's mother and sister prior to the submission hearing. Both the victim's mother, Kim Jackson, and the victim's sibling, a five-year old child, were in the home during portions of the general time frame in which the victim received the fatal blows. The appellant contends there was evidence that Jackson had previously abused the victim. Trial counsel testified at the submission hearing that the investigators employed through his office had been unable to locate these persons through Jackson's reputed places of employment and residence. Counsel testified he had received from the state a copy of her transcribed statement and that efforts were still being made to interview these witnesses prior to the trial date. Neither of these witnesses was presented at the motion hearing, and accordingly, there is no indication in the record that the testimony of either would have influenced the appellant to eschew a guilty plea and go to trial.

When the claim of ineffective assistance is based upon the failure to present potential witnesses, their testimony should be offered at the hearing at which counsel's representation is challenged. In this manner the court can consider whether (a) a material witness existed and could have been discovered but for counsel's neglect, (b) a known witness was not interviewed by counsel, (c) the failure to discover or interview a witness prejudiced the petitioner, or (d) the failure to call certain witnesses denied critical evidence to the prejudice of the petitioner. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In the case before us, the putative witnesses did not testify, and we are precluded from reviewing the import of their testimony. Hence, the appellant has failed to show prejudice, assuming arguendo that the failure to interview these persons prior to the submission hearing was deficient representation. The claim is without merit.

10

Next, the appellant contends that, but for his attorney misleading him into believing that he could receive the death penalty, he would not have been frightened into pleading guilty. The record does not support the appellant in this claim. The appellant's own testimony fails to support that counsel misinformed the appellant as to the applicability of the death penalty. The essence of appellant's testimony is that he was influenced by his father and by the statements of counsel that disparaged the chances of avoiding a life sentence at trial. Ms. Phylis West, who attended the conference among the appellant, appellant's father, and trial counsel on March 4, 1995, stated when asked if the death penalty was mentioned, "Uh--I believe it was mentioned in that meeting, too, that [counsel] said that--uh--there was a possibility that [the appellant] could even get the death sentence." This somewhat tentative testimony was found by the trial court to be overcome by the affirmative assertions by trial counsel that counsel knew the appellant was not eligible for the death penalty and that he never told the appellant that he could receive this penalty. The evidence does not preponderate against the trial court's finding, and accordingly, this issue too is without merit.

We hold that the appellant has failed to establish his claim of ineffective assistance of counsel.

## II. Withdrawal of Guilty Plea in General.

In this appeal, the defendant challenges the trial court's overruling his motion to withdraw his guilty plea. Generally, a defendant who submits a guilty plea is not entitled to withdraw the plea as a matter of right. State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995) (citing State v. Anderson, 645 S.W.2d 251, 253-254 (Tenn. Crim. App. 1982) and 8A Moore's Federal Practice § 32.09[1] at p. 32-

87 (1991 Revision)).  The decision to allow the withdrawal of a guilty plea is within the discretion of the trial court and may not be overturned on appeal absent an abuse of discretion.  Henning v. State, 184 Tenn. 508, 511, 201 S.W.2d 669, 670 (1947); State v. Davis, 823 S.W.2d 217, 220  (Tenn. Crim. App.. 1991).  However, the existence of discretion implies that there are limits to its exercise.  State v. Williams, 851 S.W.2d 828, 832(Tenn. Crim. App. 1992).  The record must contain some substantial evidence to support the trial court's decision.  Goosby  v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995).

Under Tennessee law, a  trial court may set aside the acceptance of a guilty plea in three different circumstances.  Rule 32(f) of the Tennessee Rules of Criminal Procedure governs two situations in which a defendant wishes to withdraw a guilty plea before the judgment has become final.[9]  Post-conviction procedures found at Tennessee Code Annotated sections 40-30-201, et seq., become available once a judgment is final.  Because the record in this case discloses some confusion with respect to the appropriate standard, we discuss the matter in some detail.

According to the rule, a trial court may permit the withdrawal of a guilty plea upon a showing "of any fair and just reason" before it sentences the defendant. Tenn. R. Crim. P. 32(f).[10]  Once the defendant is sentenced, however, Tennessee's

---

[9]  (f) **Withdrawal of Plea of Guilty** A motion to withdraw a plea of guilty may be made upon a showing by the defendant of any fair and just reason only before sentence is imposed; but to correct manifest injustice, the court after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw his plea.  Tenn. R. Crim. P. 32(f).

[10]  For cases in which the "any fair and just reason" standard is applied, see, for example, State v. Anderson, 645 S.W.2d 251 (Tenn. Crim. App. 1982); State v. Dean Allen Trinkle, No.  03C01-9304-CR-00123 (Tenn. Crim. App., Knoxville, Nov. 30, 1993), perm. app. denied (Tenn. 1994);  State v.

12

rule requires that defendants meet a different standard. The rule also imposes a time constraint.[11] According to the rule, a trial court may permit the withdrawal of a guilty plea after sentencing and before the judgment becomes final only "to correct manifest injustice." Tenn. R. Crim. P. 32(f).[12]

Rule 32(f) of Tennessee's Rules of Criminal Procedure is, therefore, applicable only until the judgment has become final. Once final, the judgment may be set aside pursuant to the Post-Conviction Procedure Act. Tenn. Code Ann. § 40-30-202(a)(Supp. 1996). The Act provides that a conviction or sentence is void or voidable only if the conviction or sentence were obtained through an abridgment of a right guaranteed by the Constitution of Tennessee or the Constitution of the

_____

Vincent Daugherty, No. 02C01-9104-CR-00071 (Tenn. Crim. App., Jackson, July 15, 1992), perm. app. denied (Tenn. 1992); State v. Larry Roddy, No. 246 (Tenn. Crim. App., Knoxville, March 19, 1990); State v. Bruce E. Vincent, Jr., No. 18 (Tenn. Crim. App., Knoxville, January 20, 1989).

[11]    Unlike Tennessee's rule, Rule 32 of the Federal Rules of Criminal Procedure imposes no time limit on a trial court's authority to permit the withdrawal of a guilty plea to correct a manifest injustice. The federal rule states:
> A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Fed. R. Crim. P. 32(d).

[12]    For Tennessee cases in which the "manifest injustice" standard is considered see, for example, State v. Turner, 919 S.W.2d 346 (Tenn. Crim. App. 1995); State v. Davis, 823 S.W.2d 217 (Tenn. Crim. App. 1991); State v. Drake, 720 S.W.2d 798 (Tenn. Crim. App. 1986); State v. Haynes, 696 S.W.2d 26 (Tenn. Crim. App. 1985); State v. James A. Bear, No. 03C01-9510-CC-00301 (Tenn. Crim. App., Knoxville, Sept. 9, 1996), perm. app. denied (Tenn. 1997); State v. Michael Leon Chambers, No. 01CO1-9505-CC-00143 (Tenn. Crim. App., Nashville, June 20, 1996), perm. app. denied (Tenn. 1996); State v. Steve Pickett, No. 01CO1-9211-CC-00344 (Tenn. Crim. App., Nashville, June 2, 1994); State v. William Ray Hutchins, No. 03C01-9302-CR-00044 (Tenn. Crim. App., Knoxville, Dec. 7, 1993) perm. app. denied (Tenn. 1994); State v. Daniel Leroy, No. 03C01-9206-CR-00199 (Tenn. Crim. App., Knoxville, Aug. 4, 1993); State v. Anthony Brown, No. 02C01-9106-CC-00130 (Tenn. Crim. App., Jackson, March 11, 1992); State v. Charles Eugene Lane, No. 111 (Tenn. Crim. App., Knoxville, Dec. 5, 1990); State v. Arthur Harris, No. 103 (Tenn. Crim. App., Jackson, Oct. 11, 1989).

United States. Tenn. Code Ann. § 40-30-203( Supp. 1996). The United States Supreme Court has ruled that a guilty plea must be voluntarily, understandingly, and intelligently entered to pass constitutional muster. Brady v. United States, 397 U.S. 742, 747, n. 4, 90 S.Ct. 1463, 1468, n. 4 (1970); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709 (1969). Our supreme court has long held that "a plea of guilty must be made voluntarily and with full understanding of its consequences." State ex rel. Barnes v. Henderson, 220 Tenn. 719, 727, 423 S.W.2d 497, 501 (1968).

In summary, a trial court may permit the withdrawal of or may set aside a guilty plea

> 1.     for any fair and just reason before the sentence is imposed; Tenn. R. Crim. P. 32(f);
>
> 2.     to correct manifest injustice after sentence but before the judgment becomes final; Tenn. R. Crim. P. 32(f);
>
> 3.     once the judgment is final, if the plea was not entered voluntarily, intelligently, and knowingly or was obtained through the abridgment of any right guaranteed by the United States or Tennessee Constitutions. State v. Mackey, 553 S.W.2d 337, 340-341 (Tenn.1977); Tenn. Code Ann. § 40-30-203.

The three standards are neither identical nor separate and distinct. They are on a continuum in which the more general standard includes the more specific. Immediately after entering a guilty plea, any fair and just reason will suffice to justify the withdrawal of the plea. But by its express language, Rule 32(f) contemplates that trial courts will use a more demanding standard once a sentence has been imposed. The rationale for raising the hurdle over which a defendant must jump once sentence is imposed is based "upon practical considerations important to the proper administration of justice." Kadwell v. United States, 315

F.2d 667, 670 (9th Cir. 1963).[13]    In Kadwell, the Ninth Circuit Court of Appeals

reasoned:

> Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process.

Id.


The concept of manifest injustice under Rule 32(f) is not identical to

the requirements of constitutional due process. However, we agree that "where

there is a denial of due process, there is a 'manifest injustice' as a matter of law."

State v. Davis, 823 S.W.2d 217, 220, (Tenn. Crim. App. 1991)(quoting from United

States v. Crusco, 536 F.2d 21, 26 (3rd Cir. 1976)).[14]   Federal courts have

consistently held that, although there may be considerable overlap between the

standards, manifest injustice allows a trial judge greater latitude than the

constitutional requirements. United States v. Washington, 341 F.2d 277, 281 fn. 3

(3rd Cir. 1965); Pilkington v. United States, 315 F.2d 204, 209 (4th Cir. 1963). In

Pilkington, the court recognized that "the facts disclosed in a hearing might not be

sufficient for the court to conclude that the guilty plea was involuntary and violative

---

[13]    Although Tennessee's Rule 32(f) imposes time constraints absent in Rule 32(d) of the Federal Rules of Criminal Procedure, both refer to the identical standard of "manifest injustice" in the withdrawal of a guilty plea after sentencing. Consequently, abundant federal precedent assists our interpretation of the term.

[14]    Certainly, a denial of due process would also be "a fair and just reason" for setting aside a guilty plea.

of due process, yet the court may be of the opinion that clear injustice was done." 315 F.2d at 209.

Although we have found no Tennessee case that clearly articulates the proposition recognized in Pilkington, the concept is inherent in the structure of Rule 32 and the Post-Conviction Procedures Act. For instance, this court, in State v. Turner, first found that the defendant's guilty plea satisfied the requirements of Tennessee Rules of Criminal Procedure 11 and met the constitutional standards of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709(1969) and North Carolina v. Alford, 400 U.S. 25, 92 S.Ct. 160 (1970). State v. Turner, 919 S.W.2d 346, 351-354(Tenn. Crim. App. 1995). The Turner court then turned to Tennessee case law to discover those factors Tennessee courts have considered when applying the manifest injustice standard. Id. at 355. Implicit in this analysis is a recognition that, although the standards overlap, a trial court may, under some circumstances, permit the withdrawal of a guilty plea to prevent manifest injustice even though the plea meets the "voluntary and knowing" requirements of constitutional due process.[15]

In this case, the defendant moved to set aside his guilty plea after sentencing but before the judgment was final. The timing of the motion, therefore, invoked the manifest injustice rule. Tenn. R. Crim. P. 32(f). The term "manifest injustice" is not defined either in the rule or in those cases in which the rule has been applied. Trial courts and appellate courts must determine whether manifest

---

[15] A plea of guilty must be made voluntarily, understandingly, and intelligently to pass constitutional muster. Boykin v. Alabama, 395 U.S. 238, 244, 89 S.Ct. 1709, 1713 (1969). The essence of Boykin is the requirement "that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary." Boykin, 395 U.S. at 244, 89 S.Ct. at 1713. A reviewing court may look to any relevant evidence in the record to determine the voluntariness of a plea. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

injustice exists on a case by case basis. State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The defendant has the burden of establishing that a plea of guilty should be withdrawn to prevent manifest injustice. Id.

In this case, however, the trial court received and disposed of the motion to withdraw the guilty plea as a petition for post-conviction relief. See Tenn. Code Ann. § 40-30-101-124 (1990) (repealed, effective May 10, 1995, Pub. Acts 1995, Ch. 207). This approach was taken without objection but in spite of the provisions of Rule 32(f) of the Tennessee Rules of Criminal Procedure. Although the motion to withdraw the guilty plea did not mention Rule 32(f), the motion is clearly authorized and governed by the rule. The court's transmogrification of the motion to a post-conviction petition presumably led to the application of the rule, described above, that only errors of constitutional dimension are cognizable . Tenn. Code Ann. § 40-30-105 (1990) (repealed, effective May 10, 1995, Pub. Acts 1995, Ch. 207). As pointed out above, the applicable standard under Rule 32(f) is manifest injustice, a standard that is more inclusive and less stringent than constitutional abridgement. The trial judge did not mention manifest injustice nor Rule 32(f) in his findings and conclusions.[16] We are constrained to find that the trial court did not apply the less stringent standard and that the appellant's motion was not properly considered. Because the correct standard was not applied below and because a number of witnesses testified, including defense counsel and the appellant, such that credibility of witnesses and the weight to be given to their testimony could have been key issues in the trial court's analysis,[17] we vacate the

---

[16]     See n.7, supra.

[17]     See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn.1984).

17

order denying the appellant's motion and remand this case in deference to the trial court in order for that court to enter such further findings, or to conduct such further proceedings, as are indicated by the provisions of Rule 32(f) and by the applicable portions of this opinion. On remand, the trial court shall determine whether a further hearing on the motion is necessary in order to find and settle facts material to the applicable standard of manifest injustice. If no hearing is held, the trial court shall make its findings with respect to manifest injustice based upon the applicable principles of law and the hearing previously held.

Having reviewed the record and the briefs thoroughly, however, in the interest of judicial efficiency we offer our analysis of certain issues which the trial court confronted, for the benefit of the trial court on remand.

### a. Nature of the Conviction Offense

To determine whether the appellant should be permitted to withdraw his guilty plea "to correct manifest injustice," a court must scrutinize carefully the circumstances under which the trial court accepted the plea. An analysis of the submission process under Rule 11(c), Tenn. R. Crim. P., facilitates an inquiry into the existence of manifest injustice. Rule 11 and our supreme court's decisions in State v. Mackey, 553 S.W.2d 337 (Tenn.1977) and State v. McClintock, 732 S.W.2d 268 (Tenn. 1987), control the acceptance of guilty pleas in this state. Trial judges are required to adhere substantially to the procedure prescribed in the rule. State v. Newsome, 778 S.W.2d 34, 38 (Tenn.1989). A submission hearing transcript must establish on its face that the trial court substantially complied with the requirements of Rule 11, Boykin v. Alabama and the teachings of State v. Mackey,

553 S.W.2d at 341-42, and State v. McClintock, 732 S.W.2d 268, 273 (Tenn.1987). State v. Turner, 919 S.W.2d at 352.

In this case careful attention should be given to the interrelated application of subsections (c)(1) and (f) of Rule 11. Rule 11(c)(1), in pertinent part, provides:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
>
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law ....

Tenn. R. Crim. P. 11(c)(1) (emphasis added).

This rule is related to Rule 11(f) which states that "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." This requirement exists primarily to ensure that the defendant pleads guilty with the understanding "that his admitted conduct actually constitutes the offense with which he is charged or a lesser included one." State v. Lord, 894 S.W.2d 312, 317 (Tenn. Crim. App. 1994), perm. app. denied (Tenn. 1995).

Upon a review of the record, one might fairly ask whether the appellant understood the elements of the offense to which he was pleading, as opposed to the offense with which he was originally charged. The record does not clearly demonstrate that the appellant was told by his counsel, the trial judge, or anyone else about the elements required for second-degree murder. We note that the indictment charges that the appellant "recklessly did kill Alexandria Greaves (D.O.B. 05/22/92), a child less than thirteen (13) years of age and Alexandria Greaves'

19

death resulted from aggravated child abuse.  As defined by § 39-15-402....”  Thus, the appellant was not indicted for first-degree murder via premeditation, under Tenn. Code Ann. section 39-13-202(a)(1) (Supp. 1996), and, although the plea petition affirmatively shows that the appellant read, understood, and had explained to him the elements of first-degree murder, it is not clear if he was aware of any scienter requirements of either offense, beyond recklessness as alleged in the indictment for first-degree murder.

Second-degree murder is the “knowing” killing of another.[18]  Tenn. Code Ann. § 39-13-210(a) (1990) (amended, effective July 1, 1995, Pub. Acts. Ch. 460).  A person acts knowingly when the person is aware of the nature of the conduct, the existence of the circumstances, or is aware that the conduct is reasonably certain to cause the result.  Tenn. Code. Ann. § 39-11-302(b) (1990).  There is no indication in the record that the “knowing” requirement of the offense to which he pleaded was articulated to this appellant.  The trial court did not address the issue, nor does the plea petition deal specifically with the required elements of second-degree murder, nor does the factual basis offered under Rule 11(f) speak to the scienter element.  On the other hand, there was no inquiry during the submission hearing designed to test the appellant’s understanding of the nature of second-degree murder, and moreover there was no inquiry during the hearing on the motion to withdraw the plea which indicated any prior misunderstanding on this point.  The appellant has not raised this issue, and the failure to raise it may well be because he acknowledges, tacitly at least, that he was aware of the nature of the

---

[18]     We note the anomaly involved when the conviction is for second-degree murder and the offense charged is first-degree murder alleged under Tenn. Code Ann. § 39-13-202(a)(4) (Supp. 1993): The lesser grade of the offense requires a higher degree of scienter (knowing killing) than does the higher grade of the offense (reckless killing).

conviction offense. See Johnson v. State, 843 S.W.2d 922, 926 (Tenn. 1992) (failure to instruct a guilty-pleading defendant of his constitution rights entitles the defendant to no relief if the defendant is otherwise aware of the information the mandated advice would have imparted). We are reluctant to presume a waiver of rights from a silent record, but this issue is not one of waiver. Rather, it is an issue of whether there existed a "meeting of the minds" on the plea being offered and accepted. We cannot discern the appellant's mind on this point from the record on appeal.

Constitutionally, the beginning point in a Rule 11(c)(1) inquiry is Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709 (1969), summarized above, in which the Supreme Court ruled that a guilty plea in a criminal case must be supported in the record by an affirmative showing that the accused pleaded voluntarily, understandingly, and knowingly. Boykin, 395 U.S. at 242, 89 S.Ct. at 1711. Later, the Supreme Court held that the accused did not act "voluntarily" when he pleaded guilty to "second-degree murder without being informed that intent to cause the death of his victim was an element of the offense." Henderson v. Morgan, 426 U.S. 637, 638, 96 S.Ct. 2253, 2254 (1976). In Morgan, the court noted:

> There was no discussion of the elements of the offense of second-degree murder, no indication the nature of the offense had ever been discussed with respondent, and no reference of any kind to the requirement of intent to cause the death of the victim.

426 U.S. at 642-43, 96 S.Ct. at 2256. Significantly, the respondent in Morgan testified at his post-conviction evidentiary hearing that "he would not have pleaded guilty if he had known that an intent to cause the death of his victim was an element of the offense of second-degree murder." 426 U.S. at 643-44, 96 S.Ct. at 2257. The court acknowledged that in most cases it may be "appropriate to presume that ... defense counsel routinely explain[ed] the nature of the offense in sufficient detail

21

to give the accused notice of what he is being asked to admit," 426 U.S. at 647, 96 S.Ct. at 2258, but the Supreme Court declined to apply such a presumption in Morgan because the trial court had found affirmatively as a fact that "the element of intent was not explained to the respondent." 426 U.S. at 647, 96 S.Ct. at 2258-59. Based upon such a record, the court said the plea could not be voluntary "in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice'" of the nature of the conviction offense. 426 U.S. at 645, 96 S.Ct. at 2257 (citations omitted).[19]

"Adequate notice of the nature of the charges is a constitutional requisite in any criminal prosecution." Bryan v. State, 848 S.W.2d 72, 75 (Tenn.

---

[19] This court reviewed a post-conviction challenge to a guilty plea in Chamberlain v. State, 815 S.W.2d 534 (Tenn. Crim. App. 1990). In Chamberlain we acknowledged the obligations placed upon a trial court in Tennessee, in receiving a guilty plea, as articulated in Boykin and in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) and Rule 11 of the Tennessee Rules of Criminal Procedure. Chamberlain, 815 S.W.2d at 538-40. We concluded in Chamberlain that the record did not affirmatively disclose that the plea was voluntarily and understandingly made. Id. at 540. However, we pointed out that this determination did not end the inquiry. Rather, the burden shifted to the state "to prove that the defendant voluntarily, understandingly, and knowingly entered the pleas." Id. at 540-41. The attempt to carry this burden may be made at the evidentiary hearing. Id. at 541.

Furthermore manifest injustice conceivably embraces the notion of substantial compliance. In State v. Neal, 810 S.W.2d 131 (Tenn. 1991), the Tennessee Supreme Court held that in a post-conviction attack upon a guilty plea the conviction was not void even though, prior to pleading, the trial court did not explain any of the defendant's rights except for his right to have a jury trial and to confront witnesses. Id. at 133. The court acknowledged that in Rounsaville v. Evatt, 733 S.W.2d 506 (Tenn. 1987), it promulgated strict compliance with Mackey, but in Neal the court elected to "depart from the strict holding of Rounsaville." Id. at 134. The court held that, although full compliance with the requirements of Boykin, Mackey, Rule 11, and State v. McClintock, 732 S.W.2d 268 (Tenn. 1987), is required, "absolutely literal compliance with the advice to be given is not required." Id. at 137. The court noted that "expressing the sense of the substance of the required advice to a guilty-pleading defendant" is substantial compliance. Id.

Crim. App. 1992). A trial court need not explain "in litany fashion" each element of every offense to which an accused is pleading guilty. Id. Nor does a trial judge in a guilty plea submission hearing have a duty to define each term and phrase as he would for a jury. State v. Michael Leon Chambers, No. 01CO1-9505-CC-00143, slip op. at 5 (Tenn. Crim. App., Nashville, June 20, 1996). A defendant, however, must understand the nature of the crime to which he is pleading guilty before he can determine whether his actual conduct constitutes that offense. A defendant may become aware of the elements of the offense through allegations in the indictment, the contents of the guilty plea petition, or the statement of the charges and the stipulated evidence provided by the state during the guilty plea hearing. Bryan v. State, 848 S.W.2d at 75.

b. Maximum Penalty Advice.

Tennessee law also requires that the trial court address the defendant personally in open court, inform him of, and determine that he understands the mandatory minimum and maximum possible penalties for the offense to which the defendant is pleading guilty. Tenn. R. Crim. P. 11(c)(1); Blankenship v. State, 858 S.W.2d 897, 905 (Tenn.1993); State v. McClintock, 732 S.W.2d 268, 273 (Tenn.1987); State v. Timothy W. Brown, No. 01CO1-9211-CC-00343, slip op. at 8 (Tenn. Crim. App., Nashville, June 9,1994) (Tipton, J., concurring) (citing State v. Mackey, 553 S.W.2d 337, 341 (Tenn.1977)); James Carl Ferguson v. State, No. 922, slip op. at 5 (Tenn. Crim. App., Knoxville, June 19, 1991). The failure to employ the proper sentencing statute and to advise the defendant accordingly may preclude a defendant from entering a knowing and intelligent plea, State v. Arthur

23

Harris, No. 103, slip op. at 3 (Tenn. Crim. App., Jackson, October 11, 1989), and a plea of guilty may be withdrawn if the defendant's decision to plead guilty was based on misinformation about the effect of the plea. Henning v. State, 184 Tenn. 508, 511, 201 S.W.2d 669, 670 (1947).

The appellant asserts that he was misinformed and induced to plea, in part, because of his needless fear of receiving the death penalty. We have examined this claim above from the perspective of the effective assistance of counsel, but where the object to be focused upon is the validity of the plea, the effectiveness of counsel's assistance is but one facet of the prism through which we view the object. Even though we have held that there was no ineffective assistance that might otherwise contribute to a finding of manifest injustice, the underlying facts of the plea must be reviewed independently of the effective assistance issue.

### c. McClintock Advice.

In passing, we invite the trial court to consider on remand whether the advice imparted at the submission hearing complied with the requirements set forth in State v. McClintock, 732 S.W.2d 268, 273 (Tenn. 1987), that the appellant be advised that his conviction could be used to enhance any punishment for subsequent offenses. If there is an omission of this advice, the effect on manifest injustice must be evaluated. See Bryan, 848 S.W.2d at 75.

### d. Procedure on Remand.

The common and compelling purpose behind Rule 11 and the additional requirements imposed by case law is "to insulate guilty pleas from

24

coercion and relevant defendant ignorance." State v. Neal, 810 S.W.2d 131, 135 (Tenn.1991).

In determining whether to permit the withdrawal of a guilty plea, the Sixth Circuit has held that district courts should consider a number of factors including: "(1) the delay in filing the motion to withdraw the plea; (2) the reasons for any delay; (3) whether the defendant has consistently maintained his innocence; and (4) the circumstances underlying the plea and the background of the defendant." United States v. Alexander, 948 F.2d 1002, 1003 (6th Cir. 1991).

Tennessee courts have allowed the withdrawal of guilty pleas to prevent manifest injustice "when it is established that the plea was entered due to (a) "coercion, fraud, duress or mistake," (b) "fear", (c) a "gross misrepresentation" made by the district attorney general, or an assistant, (d) the district attorney withholds material, exculpatory evidence which influences the entry of the plea, or the plea was not voluntarily, understandingly, or knowingly entered." State v. Turner, 919 S.W.2d at 355 (citations to other cases omitted).   Courts have also found that manifest injustice resulted from the trial court's failure to advise a defendant of the appropriate sentencing range, to apply the appropriate sentencing statute, or to inform a defendant of the consequences flowing from the guilty plea. State v. Timothy W. Brown, No. 01CO1-9211-CC-00343 (Tenn. Crim. App., Nashville, June 9, 1994); State v. Arthur Harris, No. 103 (Tenn. Crim. App., Jackson, Oct. 11, 1989).[20]

---

[20]    The United States Court of Appeals for the Third Circuit found that the trial court's inadvertent failure to advise a defendant of the correct maximum sentence and the defendant's resulting confusion created manifest injustice in United States v. Crusco, 536 F.2d 21, 23-24 (3rd Cir. 1976).  See also Pilkington v. United States, 315 F.2d 204, 210 (1963) ( manifest injustice results when trial court's misinformation causes defendant to plead guilty).  A Wisconsin court has found that the failure to establish a factual basis is evidence that a manifest

To determine whether a plea is voluntary, intelligent and knowing, the Tennessee Supreme Court has looked to various circumstantial factors, such as the relative intelligence of the defendant; his familiarity with criminal proceedings; the competence of his counsel; the extent of advice from counsel and court, and the reasons for the decision to plead guilty. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn.1993). We consider these factors to be equally appropriate in determining whether the withdrawal of a guilty plea is required to correct manifest injustice.

We agree that a guilty plea should not be withdrawn merely because the defendant has had a change of heart. Ray v. State, 224 Tenn. 164, 170, 451 S.W.2d 854, 856 (1970). Nor should a defendant's dissatisfaction with an unexpectedly harsh sentence be sufficient justification for a withdrawal. Clenny v. State, 576 S.W.2d 12, 15 (Tenn. Crim. App. 1978); State v. Charles Eugene Lane, No. 111, slip op. at 2 (Tenn. Crim. App., Knoxville, Dec. 5, 1990).

In summary, the trial court must review the appellant's motion to withdraw the guilty plea under the manifest injustice standard of rule 32(f) as it is amplified in this opinion. The review encompasses the elements enumerated in Rule 11(c), Tenn. R. Crim. P., Mackey, and McClintock, subject to the proviso that manifest injustice may conceivably exist even where all of these elements are satisfied. If the trial court determines that the existing evidence is inadequate for applying the requisite standard, a further hearing should be ordered, bearing in mind

---

injustice has occurred. State v. Harrington, 512 N.W.2d 261, 263 (Wis. App. 1994). A similar result was reached in State v. Dodson, 550 N.W.2d 347, 354 (Neb. 1996) (failure to establish venue in factual basis requires withdrawal of guilty plea). In Hicklin v. State, 535 P.2d 743 (Wyo. 1975), the record did not demonstrate manifest injustice because no actual reliance on the court's misstatement was demonstrated.

that "'discretion . . . should always be exercised in favor of innocence and liberty.'" Henning v. State, 184 Tenn. 508, 512, 201 S.W.2d 669, 671 (1947).

Having offered the foregoing comments for the benefit of the trial court, we affirm the trial court's judgment on the issue of ineffective assistance of counsel but otherwise vacate the order denying the appellant's motion, remanding this case in order for the trial court to make further findings and/or to conduct further proceedings in accordance with this opinion.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
GARY R. WADE, JUDGE

_____
DAVID G. HAYES, JUDGE